**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------- X
                                                            :
                                                            :
                                                            :
JOHN T. METCALF, and LAWRENCE                               :
DOPPELT and MANNY DOPPELT, as Co-                           : ECF CASE
Trustees of the Frederick Doppelt Trust,                    :
derivatively and on behalf of Eagle Bulk                    : 11-cv-03996-AKH
Shipping Inc.,                                              :
                                                            :
                    Plaintiffs,                             :
                                                            :
        v.                                                  :
                                                            :
SOPHOCLES N. ZOULLAS, ALEXIS P.                             :
ZOULLAS, DOUGLAS P. HAENSEL, JON                            :
TOMASSON, JOSEPH M. CIANCIOLO,                              :
DAVID B. HILEY, THOMAS B. WINMILL,                          :
FORREST E. WYLIE, ALAN S. GINSBERG,                         :
                                                            :
                    Defendants,                             :
                                                            :
and                                                         :
EAGLE BULK SHIPPING INC.,                                   :
                                                            :
                    Nominal Defendant  :
----------------------------------------------------------- X


**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS**




W<small>ILMER</small> C<small>UTLER</small> P<small>ICKERING</small>
 H<small>ALE AND</small> D<small>ORR</small> <small>LLP</small>
399 Park Avenue
New York, New York 10022
Telephone:  212-230-8800
Fax: 212-230-8888

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ........................................................................................................1

ARGUMENT ..............................................................................................................3

   I.   Plaintiffs Have Failed to Plead Demand Futility with Respect to Counts II, III, or IV .......3

     A.  Plaintiffs Misstate the Applicable Legal Standard for Pleading Demand Futility .............3

     B.  Plaintiffs Have Not Pleaded that A Majority of the Board is Interested or Lacks Independence ..........................................................................................................5

     C.  Plaintiffs Fail To Allege Sufficient Facts To Show that Any Transaction at Issue Was Not, at the Time, a Valid Exercise of the Board's Business Judgment ...........8

  II.  Plaintiffs Fail To State a Claim for Breach of Fiduciary Duty Regarding the Setting of Director Compensation .................................................................................14

     A.  New York Law, Not Delaware Law Applies to This Issue, and *Marx v. Akers* is Directly On Point ........................................................................................................14

     B.  Plaintiffs' *Ultra Vires* Allegations Do Not State a Claim .................................................16

CONCLUSION ..........................................................................................................18

# TABLE OF AUTHORITIES
## CASES

*Aronson v. Lewis*,
  473 A.2d 805 (Del. 1984) ............................................................................... *passim*

*Barr v. Wackman*,
  36 N.Y.2d 371 (1975) ......................................................................................... 8

*Brehm v. Eisner*,
  746 A.2d 244 (Del. 2000) ......................................................................... 9, 10, 13

*Central Laborers' Pension Fund v. Blankfein*,
  No. 600036/2010, 2011 WL 4444179 (Sup. Ct. N.Y. Cnty. Sept. 21, 2011) .......................... 12

*David B. Shaev Profit Sharing Account v. Armstrong*,
  No. Civ.A. 1449-N, 2006 WL 391931 (Del. Ch. Feb. 13, 2006),
  *aff'd*, 911 A.2d 802 (Del. 2006) ............................................................................. 5

*eBay Domestic Holdings, Inc. v. Newmark*,
  16 A. 3d 1 (Del. Ch. 2010) .................................................................................. 8

*Guttman v. Huang*,
  823 A.2d 492 (Del. Ch. 2003) ............................................................................... 5

*In re Citigroup Inc. Shareholders Derivative Litigation*,
  964 A.2d 106 (Del. Ch. 2009) ............................................................................... 5

*In re Dow Chemical Co. Derivative Litigation*,
  Civ. A. No. 4349-CC, 2010 WL 66769 (Del. Ch. Jan. 11, 2010) ............................................. 12

*In re eBay, Inc., Derivative Litigation*,
  No. 10-470-LPS, 2011 WL 3880924 (D. Del. Sept. 2, 2011) ................................................. 18

*In re Eugenia VI Venture Holdings Ltd. Litigation*,
  649 F. Supp. 2d 105 (S.D.N.Y. 2008), *aff'd*, 370 F. App'x 197 (2d Cir. 2010) ............... 17, 18

*In re Goldman Sachs Grp., Inc. Shareholder Litigation*,
  No. 5215-VCG, 2011 WL 4826104 (Del. Ch. Oct. 12, 2011) ................................. 5, 9, 10, 11

*In re InfoUSA Inc. Shareholders Litigation*,
  953 A.2d 963 (Del. Ch. 2007) ......................................................................... 6, 7, 8

*In re National Automobile Credit, Inc., Shareholders Litigation*,
  No. Civ. A. 19028, 2003 WL 139768 (Del. Ch. Jan. 10, 2003) .............................................. 6, 7

*In re Tyson Foods Inc. Consolidated Shareholder Litigation*,
919 A.2d 563 (Del. Ch. 2007)...................................................................................6

*In re Walt Disney Co. Derivative Litigation*,
731 A.2d 342 (Del. Ch. 1998), *aff'd in part, rev'd in part*,
*Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) .........................................................10

*In re Walt Disney Co. Derivative Litigation*,
906 A.2d 27 (Del. 2006) ......................................................................................9, 14

*Kahn v. Tremont Corp.*,
694 A.2d 422 (Del. 1997) ....................................................................................7, 8

*Kamen v. Kemper Financial Services Inc.*,
939 F.2d 458 (7th Cir. 1991) ...................................................................................8

*Manchester v. Narrangansett Capital Inc.*,
No. Civ. A. 10822, 1989 WL 125190 (Del. Ch. Oct. 19, 1989)................................7

*Marx v. Akers*,
88 N.Y.2d 189 (N.Y. 1996) ...............................................................2, 12, 15, 16

*Noerr v. Greenwood*,
No. Civ. A. 14320, 1997 WL 419633 (Del. Ch. July 16, 1997)................................7

*Rales v. Blasband*,
634 A.2d 927 (Del. 1993) .........................................................................................4

*Rosenquist v. Economou*,
Civil Action No. 2009-056, slip op. (High Ct. Marshall Islands Feb. 19, 2010).......7, 9, 13, 17

*Rosenquist v. Economou*,
Supreme Court Case No. 2010-002, slip op. (Sup. Ct. Marshall Islands Oct. 5, 2011) .. *passim*

*Saxe v. Brady*,
184 A.2d 602 (Del. Ch. 1962)................................................................................11

*Security Police & Fire Professionals of America Retirement Fund v. Mack*,
30 Misc. 3d 663 (N.Y. Sup. Ct. 2010) ...................................................................12

*Solomon v. Armstrong*,
747 A.2d 1098 (Del. Ch. 1999)..............................................................................18

- iii -

*Telxon Corp. v. Meyerson*,
  802 A.2d 257 (Del. 2002) ........................................................................7

*Valeant Pharmaceuticals International v. Jerney*,
  No. 19947, 2007 WL 2813789 (Del. Ch. Mar. 1, 2007)..........................12

*White v. Panic*,
  783 A.2d 543 (Del. 2001) ......................................................................17

## STATUTES & CODES

8 Del. Code § 102(b)(7)...............................................................................3

8 Del. Code. § 141(c)(2) ............................................................................15

52 MIRC, Part I, § 28(m)........................................................................1, 4

52 MIRC, Part I, § 57(1)(c) .......................................................................15

52 MIRC, Part I, § 58(4) ...........................................................................15

52 MIRC, Part I, § 81 ................................................................................17

N.Y. Bus. Corp. § 712...............................................................................15

N.Y. Bus. Corp. § 713...............................................................................15

**INTRODUCTION**

In their Opposition to Defendants' Motion to Dismiss ("Opposition" or "Opp."),

Plaintiffs attempt to stave off dismissal by misstating both the law and the facts.  Although not

relevant to pleading demand futility for the reasons set out below, Plaintiffs' arguments

concerning the supposed unavailability of director exculpation are particularly off the mark.

They state that Eagle Bulk does not have a clause in its charter exculpating directors from claims

based on the duty of good faith, when in fact it does.[1]  They then insist that Marshall Islands law

would not allow such a provision, even though there is a statute expressly doing so.[2]  Plaintiffs

also contend that Defendants' authorities and arguments in their Opening Brief concerning

demand futility are irrelevant because Marshall Islands law is somehow less stringent than

Delaware law.  However, just over three weeks ago, the Supreme Court of the Marshall Islands,

on October 5, 2011, endorsed and applied the two-part test set forth in *Aronson v. Lewis*, 473

A.2d 805 (Del. 1984), upholding the first and only Marshall Islands High Court (trial court)

decision addressing demand futility.  *See Rosenquist v. Economou*, Supreme Court Case No.

2010-002, slip op. at 10, 33 (Sup. Ct. Marshall Islands Oct. 5, 2011).[3]  In suggesting that a lower

standard applies, Plaintiffs confuse the demand futility standard for cases (like this one)

challenging specific Board actions with the irrelevant standard for cases alleging failure of Board

oversight.

The remainder of the Opposition fares no better.  Counts II-IV challenge several

specific Board actions: the setting of officer compensation, the approval of Sophocles Zoullas'

---

[1]  *See* Eagle Bulk Shipping Inc., Form S-1/A, Exhibit 3.1 (June 20, 2005), attached as Exhibit F to the accompanying Supplemental Declaration of Michael G. Bongiorno ("Supplemental Bongiorno Declaration").
[2]  *See* 52 MIRC, Part I, § 28(m) (permitting Marshall Islands corporations to include an exculpation clause in their Articles of Incorporation).  The relevant portion of the Marshall Islands Business Corporations Act is attached as Exhibit G to the Supplemental Bongiorno Declaration.
[3]  The Marshall Islands Supreme Court's opinion is attached as Exhibit H to the Supplemental Bongiorno Declaration.

employment agreement, the approval of the Delphin Management Agreement, and the adjournment of the May 19, 2011 shareholder meeting.  Plaintiffs do not come close to alleging that a majority of the directors was interested in any of these decisions.  Instead, they attempt to argue that the directors face a substantial likelihood of personal liability because (1) they are not exculpated and (2) Marshall Islands law provides for the possibility of liability based on mere negligence.  But this argument is simply wrong as set forth above, and, in any event, conveniently overlooks the protections of the business judgment rule, which applies irrespective of exculpation or the standard of care.  And Plaintiffs' suggestion that there was a *quid pro quo* arrangement between the directors and the executives is pure speculation, based on improper and legally rejected circular reasoning that there "must have been" one because the directors approved transactions that Plaintiffs contend were unfair to the shareholders.

Plaintiffs similarly fail to show that any Board decision was so egregious as to be beyond the bounds of the directors' business judgment.  Stripped of rhetoric and character assassination, the Complaint says little beyond that Plaintiffs would have preferred that management receive less compensation, or that the Company not have entered into the Delphin Agreement, or that the shareholder meeting not have been postponed.  But the point of the business judgment rule is that a shareholder cannot substitute his judgment for that of independent directors, absent extreme circumstances not pleaded here, and certainly not pleaded with the requisite particularity.

Finally, with respect to their director compensation claim (Count I), Plaintiffs lump together director and executive compensation in an effort to circumvent the New York Court of Appeals' holding in *Marx v. Akers*, 88 N.Y.2d 189 (N.Y. 1996).  But the director compensation, which alone is at issue in Count I, was insignificant to the finances of the Company and the

allegations related thereto fail to state a claim.  And Plaintiffs' *ultra vires* claims fail because they do not allege harm to the Company.

The Complaint should be dismissed in its entirety.[4]

## ARGUMENT

**I.**    **Plaintiffs Have Failed to Plead Demand Futility with Respect to Counts II, III, or IV**

      **A.**    **Plaintiffs Misstate the Applicable Legal Standard for Pleading Demand Futility**

Plaintiffs spend several pages laying out a convoluted argument that the standard for pleading demand futility is lower under Marshall Islands law than it is under Delaware law (as set forth in *Aronson*) and that Delaware cases on demand futility are categorically inapposite. (Opp. 12.)  According to Plaintiffs, this is so because Eagle Bulk's charter has no exculpation clause, Marshall Islands law would not permit one in any event, and Marshall Islands law provides that directors are liable for mere negligence.  (*Id.*) ("Th[e] demand futility burden is appreciably lower than in Delaware.")

This argument is completely misguided.  Eagle Bulk does, in fact, have an exculpation clause.[5]  This information is readily available from the Company's public filings with the Securities Exchange Commission.  *See* Suppl. Bongiorno Decl., Ex. F.  Moreover, contrary to the claim that Defendants "do not and cannot point to any Marshall Islands statute that permits the charter to exculpate directors, as exists in Delaware" (Opp. 11), the Marshall Island Business Corporation Act contains just such a provision, which is nearly identical to 8 Del. Code § 102(b)(7).  It states:

---

[4]  References to the "Complaint" are to the Modified Complaint filed October 12, 2011.
[5]  The sixth article of the Amended and Restated Articles of Incorporation of Eagle Bulk Shipping Inc. reads: "No director shall be personally liable to the Corporation or any of its shareholders for monetary damages for breach of fiduciary duty as a director, except to the extent such exemption from liability or limitation thereof is not permitted under the BCA as the same exists or may hereafter be amended."  *See* Suppl. Bongiorno Decl., Ex. F at 5.

the articles of incorporation may also contain a provision for elimination or limitation of personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, provided that such provision shall not eliminate or limit the liability of a Director:  (i) for any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not undertaken in good faith or which involve intentional misconduct or a knowing violation of law; or (iii) for any transaction from which the director derived an improper personal benefit.

52 MIRC, Part I, § 28(m).  But leaving aside these inexplicable misrepresentations to the Court, none of this even matters.  In *Rosenquist v. Economou*—the first and only case in which demand futility was addressed by the Marshall Islands High Court or the Marshall Islands Supreme Court—those courts adopted and applied the Delaware *Aronson* test ***without qualification*** in a case that, like this one, alleged that a shipping company was run for the benefit of an executive at the expense of shareholders.  *Rosenquist*, Supreme Court Case No. 2010-002, slip op. at 10-11.  The Supreme Court decision was issued on October 5, 2011, a week before Plaintiffs filed their Opposition.  It affirmed the High Court (trial court) dismissal, on which Defendants relied in their opening brief and Plaintiffs criticized as being merely a "lower court decision"  (Opp. 10), even though it was then the only case directly applying the relevant law in this matter.  Notably, in adopting the *Aronson* test, the Supreme Court never suggested that *Aronson* in any way "conflict[ed]" with any aspect of Marshall Islands law.  The standard for pleading demand futility under Marshall Islands law is unquestionably the same as under Delaware law.

Plaintiffs appear to have conflated the standard for demand futility in a case challenging specific Board actions with the irrelevant standard in a case based on directors' failure of oversight.  In the latter type of case, by definition there is no business judgment at issue, *see Rales v. Blasband*, 634 A.2d 927, 933-34 (Del. 1993), so the focus is on whether the directors are substantially likely to be personally liable for violating the applicable standard of care.  *See id.* ("The essential predicate for the *Aronson* test is the fact that a decision of the board of directors

- 4 -

is being challenged in the derivative suit."); *David B. Shaev Profit Sharing Account v. Armstrong*, No. Civ.A. 1449-N, 2006 WL 391931, at *4 (Del. Ch. Feb. 13, 2006) (where "there is no challenged transaction," court must "determine … whether a majority of directors face a substantial likelihood of personal liability"), *aff'd*, 911 A.2d 802 (Del. 2006).  Indeed, the case on which Plaintiffs principally rely, *Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003) is just such a case.  In a failure of oversight case, the substantive standard of care, and whether directors are exculpated, are relevant.  But in a case such as this one challenging specific board actions, the directors' actions are protected by the business judgment rule, and substantial likelihood of personal liability can be shown only by conduct that exceeds the rule's protections.  *See In re Citigroup Inc. S'holders Deriv. Litig.*, 964 A.2d 106, 121 (Del. Ch. 2009) ("[D]emand will be excused based on a possibility of personal director liability only in the rare case when a plaintiff is able to show director conduct that is 'so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists.'") (quoting *Aronson*, 473 A.2d at 815); *see also In re Goldman Sachs Grp., Inc. S'holder Litig.*, No. 5215-VCG, 2011 WL 4826104, at *35 (Del. Ch. Oct. 12, 2011) (applying *Aronson* and finding plaintiffs must plead particularized facts showing bad faith to overcome business judgment rule).  In other words, in the instant context, exculpation or the possibility of liability for negligence makes no difference.

### B.    Plaintiffs Have Not Pleaded that A Majority of the Board is Interested or Lacks Independence

For the reasons just explained, Plaintiffs cannot show that directors were "interested" through some phantom lower standard of likelihood of personal liability.  Nor can they point to

any personal financial stake for a majority of the directors on the face of any transaction.[6]  So

they are left to invent a *quid pro quo* arrangement under which, in exchange for approving the

transactions at issue, Eagle Bulk's executives would not challenge the directors' compensation.

(Opp. 13.)  But Plaintiffs offer no facts whatever regarding this supposed arrangement, which is

counterintuitive because no vehicle is suggested by which the executives could have controlled

the director compensation had they wished to do so.  Instead, Plaintiffs offer the improper

reasoning that because the challenged transactions were not the product of sound business

judgment, the only explanation as to why the directors approved them is that there "must have

been" a *quid pro quo* in place.  (Opp. 15.)  But the two prongs of *Aronson* are meant to be

independent inquiries, and this effort to use one to establish the other is contrary to *Rosenquist*,

which rejected as "circular" plaintiffs' argument that the directors were not independent from the

CEO because they approved transactions that benefited him.  *See Rosenquist*, Supreme Court

Case No. 2010-002, slip op. at 19; *In re Tyson Foods Inc. Consol. S'holder Litig.*, 919 A.2d 563,

588 (Del. Ch. 2007) (rejecting as "circular" attempt to plead lack of independence by argument

that directors failed to exercise business judgment with respect to various transactions); *In re

InfoUSA Inc. S'holders Litig.*, 953 A.2d 963, 989 (Del. Ch. 2007) (rejecting "due to its circular

nature" argument that directors "*must* be interested" because of their approval of certain

transactions involving CEO, and noting that if demand were excused under such circumstances

"then in few (if any) such suits will demand be required").

    The cases Plaintiffs cite do not support their suggested inference of a *quid pro quo*

arrangement.  In *In re Nat'l Auto Credit, Inc., S'holders Litig.*, No. Civ. A. 19028, 2003 WL

139768 (Del. Ch. Jan. 10, 2003), the court was willing to infer a *quid pro quo* only because the

---

[6]  As explained in Defendants' opening brief (Defs. Br. 9, n.10), Defendants do not dispute that Sophocles Zoullas and Alexis Zoullas would be interested in executive compensation decisions or Sophocles Zoullas would be interested in the Board decision to enter an agreement with Delphin or in his 2008 Employment Agreement.

resolutions that were claimed to be in consideration for each other were "adopted at the same meeting, within minutes of each other." *Id.* at *9. Obviously, no such circumstances exist here, where Plaintiffs allege an amorphous "agreement" over a several year period, and offer nothing by way of immediate temporal connection between any relevant actions. (Opp. 13-15); *see also Rosenquist v. Economou*, Civil Action No. 2009-056, slip op. at 20 n.14 (High Ct. Marshall Islands Feb. 19, 2010) (distinguishing *In re National Auto Credit, Inc*., noting that *quid pro quo* allegations not to be credited when challenged decisions not contemporaneous with increase in director compensation, and declining to infer *quid pro quo* agreement). Contrary to Plaintiffs' hyperbole, Defendants do not claim that there could never be an arrangement whereby executives and directors agree to enrich one another (although it is unlikely given that executives typically have no role in setting director compensation); rather, the point is that there are no particularized allegations here permitting an inference of such a deal.[7]

Apparently recognizing the weaknesses inherent in their *quid pro quo* theory, Plaintiffs simply list without analyzing four other cases, *Telxon Corp. v. Meyerson*, 802 A.2d 257, 266 (Del. 2002), *Kahn v. Tremont Corp.*, 694 A.2d 422, 430 (Del. 1997), *In re info USA, Inc. S'holders Litig.*, 953 A.2d 963, 990 (Del. Ch. 2007), and *Manchester v. Narrangansett Capital Inc.*, No. Civ. A. 10822, 1989 WL 125190 (Del. Ch. Oct. 19, 1989), which address director independence. Both *Telxon* and *Manchester* dealt with director compensation decisions, where demand was excused because the directors had a financial interest in those decisions. Here, Defendants have not asserted demand futility as to Count I. *Kahn* does not even address demand

---

[7] Plaintiffs urge that all the events at issue be treated as a single scheme. (Opp. 15.) In related circumstances, Delaware courts insist on compelling evidence of temporal proximity before treating transactions collectively. *See Noerr v. Greenwood*, No. Civ. A. 14320, 1997 WL 419633, at *9 (Del. Ch. July 16, 1997) (considering board approvals of two stock incentive plans as part of "a single, unified transaction, because the two plans were almost identical, were approved by the board at the same meeting, were approved by the shareholders in the same proxy solicitation, and together provided benefits for the entire board"). Plaintiffs have not pleaded the necessary factual predicate here.

futility, but instead concerns the application of the entire fairness test to a challenged transaction involving self-dealing by a controlling shareholder.[8]  *See Kahn*, 694 A.2 at 428.  And in *In re InfoUSA, Inc*., a substantial likelihood of personal liability could be inferred where certain directors signed Form 10-Ks while in possession of a report that directly contradicted statements made therein.  *In re InfoUSA, Inc*., 953 A.2d at 990.  There are no remotely analogous allegations here.[9]

Finally, Plaintiffs claim that this case is similar to *Barr v. Wackman*, 36 N.Y.2d 371 (1975), where outside directors were held to be interested on the basis of mere negligence.  *Barr*, however, was decided many years before *Aronson*.  As noted by the Seventh Circuit, *Barr* is contrary to Delaware law, and specifically to *Aronson* and its progeny, and therefore the law of the Marshall Islands.  *See Kamen v. Kemper Fin. Servs. Inc.*, 939 F.2d 458, 461 (7th Cir. 1991) (declining to apply *Barr*, citing to *Aronson*, and noting that "[t]he prevailing contemporary view is that demand is necessary if the directors are disinterested . . . . Careless acts by directors are regrettable but not a source of personal liability").

### C.    Plaintiffs Fail To Allege Sufficient Facts To Show that Any Transaction at Issue Was Not, at the Time, a Valid Exercise of the Board's Business Judgment

Under *Aronson*, the only other way to excuse demand is to plead by specific facts that the directorial decisions at issue were not a valid exercise of business judgment.  *Aronson*, 473 A.2d

---

[8]  Nowhere do Plaintiffs assert that the entire fairness doctrine, rather than the business judgment rule, should govern the Court's analysis of Plaintiffs' claims regarding Eagle Bulk's executive compensation, the Delphin agreement, or the adjournment of the shareholder meeting—nor could they.  *See eBay Domestic Holdings, Inc. v. Newmark*, 16 A. 3d 1, 37-38 (Del. Ch. 2010) ("Entire fairness review ordinarily applies in cases where a fiduciary either literally stands on both sides of the challenged transaction or where the fiduciary expects to derive personal financial benefit from the challenged transaction in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally.") (declining to apply entire fairness test) (citation omitted).

[9]  Additionally, Plaintiffs' attempt to repackage their allegations concerning Eagle Bulk's decisions to change auditors and to "suspend" dividend payments as evidence of a *quid pro quo* arrangement, (Opp. 13-14), is no more successful than their initial attempt to use these allegations in support of their excessive compensation claims. (Defs. Br. 6, n.5, 20, n.19.)

at 814.  This is an extraordinarily high showing, one that Plaintiffs cannot make here.  The Supreme Court of Delaware has stated that "[i]rrationality is the outer limit of the business judgment rule," *Brehm v. Eisner*, 746 A.2d 244, 264 (Del. 2000), and courts have declined to second-guess rational board decisions lest they become "super-directors, measuring matters of degree in business decisionmaking," *id.* at 266; *see also Rosenquist*, Civil Action No. 2009-056, slip op. at 23 (plaintiff failed to allege facts showing directors' decision was "beyond the bounds of rationality").  As previously explained, courts have found business judgment violations only in extreme circumstances where the Board's decision-making process was so inadequate that bad faith could be inferred, or where the decision was so egregious that it could only have been made with conscious disregard of the directors' duties.  *See Rosenquist*, Supreme Court Case No. 2010-002, slip op. at 23; *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 63 (Del. 2006) (upholding trial court formulation of "bad faith" for purposes of business judgment rule as "conscious disregard for one's responsibilities").

### 1.    Executive Compensation

A derivative plaintiff challenging executive compensation faces a tremendously high hurdle, because "[i]t is the essence of business judgment for a board to determine if a particular individual warrants large amounts of money, whether in the form of current salary or severance provisions."  *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000) (citations and internal quotation marks omitted) (requiring plaintiff to show that directors "irrationally squander or give away corporate assets"); *In re Goldman Sachs Grp., Inc. S'holder Litig.*, 2011 WL 4826104, at *17 (requiring plaintiff to show that work done by Goldman's executives and employees "was of such limited value to the corporation that no reasonable person in the directors' position would have approved their levels of compensation") (citations and internal quotation marks omitted).  Indeed, Marshall Islands law recognizes that "the size and structure of executive compensation

- 9 -

are inherently matters of judgment." *Rosenquist*, Supreme Court Case No. 2010-002, slip op. at 31 (quotation omitted).

In order to overcome the business judgment rule, or to show waste, Plaintiffs must show that "no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *In re Walt Disney Co. Deriv. Litig.*, 731 A.2d 342, 362 (Del. Ch. 1998), *aff'd in part, rev'd in part, Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) (citations omitted); *see also Brehm*, 746 A.2d at 263.

Plaintiffs have not met this burden.  Their challenges to the compensation are that (1) Eagle Bulk failed to benchmark against its competitors, (2) the compensation was significantly higher than that paid by Genco, a domestic competitor of Eagle Bulk, and (3) the compensation continued to increase as the stock price declined.  (Compl. at ¶¶ 52, 55, 68.)  However, none of these allegations is sufficient to demonstrate demand futility.

Plaintiffs cite no authority showing that there is an obligation to benchmark or that the failure to do so suggests bad faith.  As to Genco, *In re Goldman Sachs Grp., Inc. S'holder Litig.*, 2011 WL 4826104, a very recent decision by the Delaware Chancery Court, is informative. There, the plaintiffs sought to show that Goldman's compensation was excessive by providing "comparisons of Goldman's average pay per employee to firms such as Morgan Stanley, Bear Stearns, Merrill Lynch, Citigroup, and Bank of America." *Id*. at *16.[10]  The court rejected the comparison, finding that plaintiffs did not provide "any indication of why these firms [were] comparable to Goldman or their respective primary areas of business" or "compare trading segment to trading segment or any other similar metric." *Id*.  The court held that "*[a] broad*

---

[10]  The *Goldman* court's approach in rejecting the allegations therein is particularly powerful in neutralizing Plaintiffs' benchmarking argument given that the *Goldman* plaintiffs compared Goldman's employee compensation figures with five other Wall Street investment banks, thereby providing a far more complete picture of the market than Plaintiffs here, who rely principally on only one competitor as a basis for their allegations.

*assertion that Goldman's board devoted more resources to compensation than did other firms,*
*standing alone, is not a particularized factual allegation creating a reasonable doubt that*
*Goldman's compensation levels were the product of a valid business judgment*."  *Id.* (emphasis
added). The same reasoning applies here: the fact that Genco is a competitor is an insufficient
basis to conclude that Eagle Bulk should compensate its executives exactly the same way.[11]

Furthermore, even if Eagle Bulk's compensation "exceeded the industry average," short
of  a "shocking disparity," that is not enough to render it "legally excessive."  *Saxe v. Brady*, 184
A.2d 602, 610 (Del. Ch. 1962); *In re Goldman Sachs Grp., Inc. S'holder Litig*., 2011 WL
4826104, at *17 (even though percentage of Goldman's total compensation to net income was
more than twice that of typical hedge fund, court "fail[ed] to see a 'shocking disparity' between
the percentages that would render [Goldman's compensation] 'legally excessive'") (citations
omitted).  There is no such disparity here.  First of all, Plaintiffs simply hand pick one competitor
and then complain about the comparison—hardly a fair or rigorous analysis.   Further, as the
Complaint shows, Eagle Bulk's executive compensation is comparable to at least one of its
foreign competitors, Dryships.  (*See* Compl. ¶ 59.)[12]

Finally in this regard, the decline in Eagle Bulk's financial condition and stock price does
not render Eagle Bulk's executive compensation excessive.  By its nature, executive
compensation is forward-looking.  Corporations could not function if shareholders could reach

---

[11]  Plaintiffs merely assert that Genco "is a New York City headquartered dry bulk shipping company incorporated
in the Marshall Islands," (Compl. ¶ 41), and "is almost five times as profitable, and when measured by the number
of vessels in operation, Genco is 25% larger." (*Id.* at ¶ 53.)

[12]  According to Plaintiffs' own chart, Eagle Bulk's aggregate executive director cash compensation and its total
director and officer cash compensation are comparable to those of foreign competitor Dryships, whose executive
and director compensation were recently challenged unsuccessfully in the Marshall Islands courts.  *See Rosenquist*,
Supreme Court Case No. 2010-002, slip op. at 30-31.  For example, Plaintiffs' chart lists Eagle Bulk's 2010
aggregate executive director cash compensation as $11,019,799, which is almost identical to that of Dryships.
(Compl. ¶ 59.)  Similarly, Eagle Bulk's total director and officer cash compensation ($12,339,598) was only five
percent more than the amount paid by Dryships to its directors and officers ($11,700,000).  (*Id.*)

back after every period of economic decline and institute lawsuits to reclaim executive

compensation.  The mere fact that Eagle Bulk's earnings and stock price fell during a severe

economic downturn says nothing about whether any executive failed adequately to perform his

or her job.  *Cf. Marx v. Akers*, 88 N.Y.2d 189, 204 (N.Y. 1996) (in context of motion to dismiss

for failure to state a claim, holding that director compensation was not actionable merely because

it went up while company's earnings and stock price declined).[13]  Plaintiffs declare that  "such a

logical inference flows from the specific allegations" in the Complaint (Opp. at 19), but rhetoric

is no substitute for substance.  *See Security Police & Fire Prof'ls of Am. Ret. Fund v. Mack*, 30

Misc. 3d 663, 678 (N.Y. Sup. Ct. 2010) (applying Delaware law and finding that "[t]he

complaint fails to allege particularized facts raising a reasonable doubt that the compensation

paid by Morgan Stanley during the relevant years was 'disproportionately' large or

'unconscionable' in light of employee contributions" where plaintiffs "fail to allege any facts

that tie [financial losses] to any specific employee's, or group of employees' performance")

(distinguishing *In re Citigroup Inc*. on this ground).[14]

### 2.      Delphin Agreement

Plaintiffs' quarrel with the decision of the Eagle Board to enter into a management

agreement with Delphin and to "allow" Sophocles Zoullas to serve as the non-executive

chairman of Delphin is nothing more than impermissible second-guessing of a business

judgment.  *See In re Dow Chem. Co. Deriv. Litig.*, Civ. A. No. 4349–CC, 2010 WL 66769, at *9

---

[13]  *See also Central Laborers' Pension Fund v. Blankfein*, No. 600036/2010, 2011 WL 4444179, at *6-7 (Sup. Ct. N.Y. Cnty. Sept. 21, 2011).  There the court dismissed, under prong two of *Aronson*, a waste claim challenging board approval of $10.9 billion in employee compensation where "revenues, net earnings, earnings per share, and stock price all declined" over the same period.  The court found plaintiffs failed to prove that "the past and future performance of its employees, was so disproportionately small that no reasonable person would accept it" as consideration for the employee compensation.  *Id.*

[14]  Plaintiffs' reliance on *Valeant Pharmaceuticals Int'l v. Jerney*, No. 19947, 2007 WL 2813789 (Del. Ch. Mar. 1, 2007), is misplaced because *Valeant* involved a self-compensation transaction that necessarily fell outside the scope of the business judgment rule and required the company to prove a "fair price" based upon economic and financial considerations.  *Id.* at *10.  As previously noted, the entire fairness doctrine is not applicable to this case.

(Del. Ch. Jan. 11, 2010) ("[S]ubstantive second-guessing of the merits of a business decision, like what plaintiffs ask the Court to do here, is precisely the kind of inquiry that the business judgment rule prohibits."); *Brehm*, 746 A.2d at 266 (noting that business judgment rule is intended to preclude courts from second guessing business's decision-making); *Rosenquist*, Civil Action No. 2009-056, slip op. at 26 (absent procedural flaws, court will not second-guess directors' business decisions).

Despite their colorful allegations about a "conflict" between Eagle and Sophocles Zoullas, Plaintiffs fail to identify even a single transaction in which Mr. Zoullas took action on behalf of Delphin that harmed Eagle Bulk.  To the extent that they allege that the fees paid by Delphin were only 16 percent of Eagle Bulk's own costs of providing the service,[15] strikingly similar allegations were rejected as insufficient to overcome the business judgment presumption in *Rosenquist*.  *See Rosenquist*, Supreme Court Case No. 2010-002, slip op. at 29-30 (rejecting allegation that company paid exorbitant termination fee to firm affiliated with CEO); *id.* at 24-27 (rejecting allegation that company overpaid its CEO by 93 percent to repurchase certain shares). Finally, Plaintiffs' allegations that "the same law firm represented both sides and Sophocles Zoullas is listed as Delphin's contact, rather than Eagle Bulk's" (Opp. 21) at best identify some theoretical conflict rather than any harm to the corporation, and even then they fail to explain why the measures they concede the Board did take to guard against any actual conflict were inadequate.

---

[15]  Plaintiffs significantly overstate the costs Eagle Bulk incurred in providing services to Delphin.  Plaintiffs seemingly arrived at their 16 percent figure by simply taking Eagle Bulk's expenses and dividing them by the number of ships Eagle Bulk maintains.  (Compl. ¶ 81.)  However, Plaintiffs' simplistic and self-serving math assumes, without support, that the expenses Eagle Bulk incurred for its own ships are the same as those it incurred in servicing additional Delphin ships.  This is obviously far from any reasonable approach, as the cost of adding a few more Delphin ships to Eagle Bulk's established fleet would clearly result in only marginal additional costs to Eagle Bulk, which already has the infrastructure in place to service such ships.

### 3.    Adjournment of the Shareholder Meeting

Plaintiffs allege that the May 19, 2011 shareholder meeting was postponed one month in order to allow the Company to drum up support for the required non-binding shareholder vote on executive compensation.  (Compl. ¶ 95.)  They then attempt to shift the burden of the business judgment rule onto Defendants by claiming that Defendants "do not offer any possible valid business reason" for the adjournment. (Opp. at 22.)

But it is Plaintiffs' burden to plead that the decision was so egregious as to evidence conscious disregard of duties, and clearly they have not sustained that burden.  *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 66 (Del. 2006).  Even if Plaintiffs are right about the purpose of the adjournment, such action is not alleged to have violated any company bylaw or any applicable law, or, more importantly, to have harmed the Company or shareholders in any way.  Because the earlier vote would have been non-binding,[16] it makes no plausible difference that it was delayed, even if one unfairly assumes the outcome would have been different had the vote taken place earlier.  Moreover, a variety of matters were under consideration at the meeting, not just the non-binding shareholder vote, and Plaintiffs have not pleaded facts showing that it was beyond the bounds of business judgment to allow more shareholders to vote on these matters.[17]

## II.   Plaintiffs Fail To State a Claim for Breach of Fiduciary Duty Regarding the Setting of Director Compensation

### A.    New York Law, Not Delaware Law Applies to This Issue, and *Marx v. Akers* is Directly On Point

Plaintiffs acknowledge that Marshall Islands law instructs courts to look to the law of Delaware and other states with substantially similar legislative provisions insofar as they do not

---

[16]  *See* Eagle Bulk Shipping Inc., Form DEF 14A (April 7, 2011) (attached as Exhibit D to the Supplemental Bongiorno Declaration).

[17]  The meeting involved the election of two directors, ratification of a new outside auditor, and non-binding votes regarding executive compensation and the frequency of executive compensation votes.  (Compl. ¶ 90.)

conflict with Marshall Islands law.  (Opp. 9-10.)  As noted in Defendants' Opening Brief, given the difference between Marshall Islands and Delaware law concerning the authority of committees of a corporate board to fix director compensation,[18] the Court should look to New York law on this subject.  Plaintiffs, seeking to avoid the application of New York law here, claim disingenuously that New York's law is not "any closer fit than Delaware's,"  but this ignores the fact that the New York Business Corporation Code's provisions on director compensation are—unlike Delaware's on this issue—virtually word-for-word identical to that of the Marshall Islands.  *Compare* N.Y. Bus. Corp. §§ 712, 713 *with* 52 MIRC, Part I, § 57(1)(c); 52 MIRC, Part I, § 58(4).

The reason why Plaintiffs want to avoid New York law is that they simply cannot distinguish *Marx v. Akers*, 88 N.Y.2d 189, 203 (N.Y. 1996).  There, the court held that it would only sustain an excessive director compensation complaint in "extreme cases," such as "where directors increase their collective salaries so as to use up nearly the entire earnings of a company; where directors or officers appropriate the income so as to deprive shareholders of reasonable dividends, or perhaps so reduce the assets as to threaten the corporation with insolvency. . . ." *Id.* (citation omitted).[19]

Plaintiffs repeat their allegation that the directors did not benchmark their own salaries and paid themselves more than their peers, and then disingenuously claim that *Marx* held that "these facts" called into question the good faith of the directors.  (Opp. 25.)  But there is no discussion at all in *Marx* about benchmarking, or pay relative to other corporations.  Indeed, Plaintiffs' quotation from *Mar*x is followed immediately by a discussion that expressly rejects as

---

[18]  *Compare* 8 Del. Code. § 141(c)(2) *with* 52 MIRC, Part I, § 57(1)(c).
[19]  The *Marx* court further held that  "courts will not undertake to review the fairness of official salaries, at the suit of a shareholder attacking them as excessive, unless wrongdoing and oppression or possible abuse of a fiduciary position are shown."  *Marx*, 88 N.Y.2d at 203 (citation omitted).

conclusory and insufficient allegations quite similar to others that Plaintiffs make here—that the compensation at issue bore little relation to the services rendered, and that it increased dramatically even though the directors' responsibilities did not increase, and that the company's performance measured by its earnings and stock price were poor.  *Compare Marx*, 88 N.Y.2d at 204 *with* (Compl. ¶¶ 37, 68.)

Plaintiffs also attempt to squeeze this case into the narrow exception recognized in *Marx* for allegations that director compensation deprives shareholders of dividends or reduces assets so as to threaten the corporation with insolvency.  (Opp. 25.)  Here, however, the alleged director compensation ($6.4 million) is only a tiny fraction of the Company's combined net income for the period (approximately $121.8 million) (Compl. ¶ 51), and plainly had no material effect, much less "use[d] up nearly the entire earnings of [the] company."  *Marx*, 88 N.Y.2d at 203.  Only *director* compensation is at issue in Count I, and Plaintiffs therefore cannot aggregate executive compensation with director compensation to argue they have met the *Marx* standard.  (*See* Compl. ¶ 51 and Opp. at 25.)  Plaintiffs assert that *Marx* permits consideration of "collective salaries" for determining excessiveness (Opp. 26), but again this is disingenuous: *Marx* holds that "[a] case of fraud is presented where *directors* increase their collective salaries so as to use up nearly the entire earnings of a company . . . ." *Marx*, 88 N.Y.2d at 203 (emphasis added).

In short, Plaintiffs do not state a claim under *Marx.*

### B.      Plaintiffs' *Ultra Vires* Allegations Do Not State a Claim

Plaintiffs do not deny that the Complaint is fundamentally inconsistent.  On the one hand, they allege that the Compensation Committee set director compensation in violation of a non-delegation statute. (Compl. ¶ 33.)  On the other hand, they allege that the directors set their

own compensation pursuant to a *quid pro quo* arrangement with the Company's executives. (Compl. ¶ 124.)  The Opposition does nothing to reconcile this conflict.

Instead, Plaintiffs seem to embrace the conflict, and to blame it on language in the 2011 proxy that the Compensation Committee establishes director compensation and that executive compensation was ratified by the full Board.  (Opp. at 26.)  Instead of speculating and making inconsistent allegations, Plaintiffs should have done a books and records request for the Company's corporate minutes.  *See* 52 MIRC, Part I, § 81 (books and records provision); *see also Rosenquist*, Civil Action No. 2009-056, slip op. at 20 (declining to credit plaintiff's assertion as to the amount of compensation each director received where public filings were ambiguous and plaintiff failed to make a books and records request); *White v. Panic*, 783 A.2d 543, 557 (Del. 2001) (admonishing derivative plaintiff for failing to "conduct a thorough investigation, using the 'tools at hand' including the use of actions … for books and records, before filing a complaint").

More importantly, the issue is a red herring.  The essence of a derivative claim is harm to the corporation.  *See In re Eugenia VI Venture Holdings Ltd. Litig.*, 649 F. Supp. 2d 105, 125 (S.D.N.Y. 2008) (dismissing derivative claim alleging directors breached their fiduciary duties where plaintiff could not prove actual harm to the company), *aff'd*, 370 F. App'x 197 (2d Cir. 2010).  But here, even crediting the allegation that the Compensation Committee set director compensation in a manner inconsistent with Marshall Islands law, Plaintiffs do not state a claim for at least two reasons.  First, Plaintiffs do not (and could not) allege that the full Board would have set a lower level of compensation.  Indeed, any such contention would be inconsistent with the *quid pro quo* theory that animates the rest of the Complaint.  Second, without more, pleading a violation of a statute does not automatically state a claim for breach of fiduciary duty.  *See In*

- 17 -

*re eBay, Inc., Deriv. Litig.*, No. 10-470-LPS, 2011 WL 3880924 slip op. at *7 (D. Del. Sept. 2, 2011) (noting, in demand futility context, that "[e]ven an allegation that a board approved an illegal transaction is not sufficient, standing alone, to overcome the presumptions of the business judgment rule" and dismissing complaint which did not "allege with particularity that the Board, when it approved the transactions, knew that its actions were illegal") (quotation omitted).

Finally, Plaintiffs' argument that the Eagle Bylaws permit only the payment of either a fixed fee or "per meeting" fees (but not both) also elevates form over substance. Both types of payment were permitted, and no harm to the Company is or could be alleged as a result of dividing the compensation into multiple components, as opposed to paying the same amount through a single component. *See In re Eugenia*, 649 F. Supp. 2d at 125. Indeed, as both types of payments were permitted, Plaintiffs fail to establish such a clear-cut violation of the bylaws as to establish that the director compensation was void as *ultra vires*. *See Solomon v. Armstrong*, 747 A.2d 1098, 1114 n.45 (Del. Ch. 1999) ("In the context of defining void acts, *ultra vires* acts fall under a much more narrow definition which includes *acts specifically prohibited by the corporation's charter*, for which no implicit authority may be rationally surmised, or those acts contrary to basic principles of fiduciary law.") (emphasis added). Plaintiffs' real issue is obviously with the total amount of compensation paid, not how it was comprised. (Compl. ¶ 32.) Given that Plaintiffs fail to state a claim based on the amount of the compensation paid, *see supra* at 14-16, it makes no sense to allow them to pursue a more granular claim based on the components of that compensation.

## CONCLUSION

For all of the above-stated reasons, and those set forth in Defendants' Opening Brief, Defendants respectfully request that the Court dismiss the Complaint with prejudice and grant Defendants such other, further and different relief as is just and proper.

Dated: November 2, 2011                    Respectfully submitted,


                                           Wilmer Cutler Pickering Hale
                                              and Dorr LLP
                                           By: /s/ Michael G. Bongiorno
                                           Michael G. Bongiorno
                                           Shauna K. Friedman
                                           399 Park Avenue
                                           New York, New York 10022
                                           Tel.: 212-230-8800
                                           Fax: 212-230-8888

                                           SEWARD & KISSEL LLP
                                           Bruce G. Paulsen
                                           Jeffrey M. Dine
                                           One Battery Park Plaza
                                           New York, New York 10004
                                           Tel.: 212-574-1200
                                           Fax: 212-480-8421

                                           *Attorneys for Nominal Defendant Eagle
                                           Bulk Shipping Inc. and Defendants
                                           Sophocles N. Zoullas, Alexis P. Zoullas,
                                           Douglas P. Haensel, Jon Tomasson, Joseph
                                           M. Cianciolo, David B. Hiley, Thomas B.
                                           Winmill, Forrest E. Wylie, and Alan S.
                                           Ginsberg*