**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| John T. Metcalf, and Lawrence Doppelt and Manny Doppelt, as Co-Trustees of the Frederick Doppelt Trust, derivatively on behalf of Eagle Bulk Shipping Inc., | ECF<br><br>C.A. NO. 11-CV-3996-AKH |
| Plaintiffs, | |
| vs. | |
| Sophocles N. Zoullas, Alexis P. Zoullas, Douglas P. Haensel, Jon Tomasson, Joseph M. Cianciolo,  David B. Hiley, Thomas B. Winmill, Forrest E. Wylie, Alan S. Ginsberg, | |
| Defendants, | |
| and | |
| Eagle Bulk Shipping Inc.,<br>Nominal Defendant. | |

## STIPULATION OF COMPROMISE AND SETTLEMENT

This Stipulation of Compromise and Settlement ("Stipulation") is made and entered into as of June 14, 2013.  The parties to the above-captioned action, by and through their undersigned attorneys, have reached an agreement for the settlement of the matters titled *John T. Metcalf, et al. v. Sophocles N. Zoullas, et al.,* Civil Action No. 11-CV-3996-AKH ("Federal Derivative Action"), and *John T. Metcalf v. Sophocles N. Zoullas, et al*., Civil Action No. 11-CV-7728-AKH ("Options Derivative Action," and together with the Federal Derivative Action, the "Federal Actions"), filed in the United States District Court in the Southern District of New York (the "Court"), and *Steven H. Chan v. Sophocles Zoullas, et al*., Index No. 652335/2011 (N.Y. Sup.) ("Chan Action"), and *Harry E. Harris, Jr. v. Sophocles Zoullas, et al*., Index No.

652398/2011 (N.Y. Sup.) ("Harris Action," and together with the Chan Action, the "New York Actions," and together with the Federal Actions, "the Actions"), filed in the Supreme Court of New York, New York County, on the terms set forth below and subject to Court approval pursuant to Fed. R. Civ. Proc. Rule 23.1. This Stipulation is intended to fully, finally, and forever resolve, discharge, and settle all claims in the Actions.

The Parties to this Stipulation are:

1.   Manny Doppelt ("Doppelt"), as Trustee of the Frederick Doppelt Trust, shareholder of Eagle Bulk Shipping, Inc. ("Eagle"), who joined the Federal Derivative Action on behalf of Eagle pursuant to Fed. R. Civ. Proc. Rule 23.1;

2.   Helen Metcalf ("Metcalf"), representing the estate of John T. Metcalf, a shareholder of Eagle who brought each of the Federal Actions (Doppelt and Metcalf are referred to in this Stipulation as "Plaintiffs");

3.   Steven H. Chan ("Chan"), shareholder of Eagle, who has prosecuted the Chan Action on behalf of Eagle;

4.   Harry E. Harris, Jr. ("Harris"), shareholder of Eagle, who has prosecuted the Harris Action on behalf of Eagle (Chan and Harris together are referenced as the "New York Plaintiffs");

5.   Individual defendants Sophocles N. Zoullas, Alexis P. Zoullas, Alan S. Ginsberg (collectively the "Executive Defendants"), as well as Douglas P. Haensel, Jon Tomasson, Joseph M. Cianciolo, David B. Hiley, Forrest E. Wylie, and Thomas B. Winmill (the "Director Defendants," and collectively with the Executive Defendants, the "Individual Defendants");

6.      Nominal defendant Eagle, a Marshall Islands corporation (Eagle, together with the Individual Defendants, the "Defendants").

**WHEREAS**,

<u>**Summary of the Federal Derivative Action**</u>

A.      On June 13, 2011, the late John T. Metcalf filed the Federal Derivative Action in the Court derivatively on behalf of Eagle against the Individual Defendants.  The complaint in the Federal Derivative Action asserted, inter alia, that the Individual Defendants breached their fiduciary duties of loyalty in connection with director and officer compensation.   That complaint also asserted breach of fiduciary duty with respect to Delphin Shipping LLC (together with its affiliates, "Delphin"), a shipping company newly formed by affiliates of Kelso & Co., LLP, and joined by Sophocles Zoullas (Kelso affiliates referred to herein as "Kelso").

B.      On September 7, 2011, the Defendants filed a motion to dismiss the Federal Derivative Action pursuant to Fed. R. Civ. P. Rules 12(b)(6) and 23.1(b).

C.      On October 12, 2011, with leave of Court, Mr. Metcalf filed the Modified Shareholder Derivative Complaint for the purpose of joining Lawrence Doppelt and Manny Doppelt, as Co-Trustees of the Frederick Doppelt Trust, which is and has been continuously since July 2005, a shareholder of Eagle.

D.      On November 21, 2011, oral argument was heard on Defendants' motion to dismiss.  The motion was denied, except for the fourth cause of action, which was dismissed on consent. The Court's Summary Order filed November 22, 2011 required the parties to that case to appear on January 20, 2012 for a case management conference.  The Court issued its Opinion and Order Denying Defendants' Motion to Dismiss on January 19, 2012.

E.      On January 13, 2012, the Director Defendants and the Executive Defendants, each as a separate group, filed their Answers.

F.      At the case management conference, which was adjourned until January 27, 2012, the Court approved a case management plan, which on January 31, 2012 was filed as a scheduling order pursuant to Fed. R. Civ. Proc. Rules 16 and 26(b).  The case management plan set December 14, 2012 as a deadline for completion of non-expert discovery, and dispositive motions were to be filed thereafter, followed by a second pre-trial conference and expert discovery.

### Summary of the Options Derivative Action

G.      On October 31, 2011, Metcalf filed the Options Derivative Action, on behalf of himself and derivatively on behalf of Eagle and against the Individual Defendants.  Metcalf's complaint alleged claims, inter alia, for violation of Section 14(a) of the Securities Exchange Act of 1934, and direct and derivative claims for breach of fiduciary duty in connection with Eagle's October 12, 2011 proxy statement, in which it solicited proxies to approve its 2011 Equity Incentive Plan and a reverse stock split.  The complaint alleged that the transactions could result in Eagle executives owning over 50% of the company.

H.      On November 3, 2011, Metcalf filed a motion for preliminary injunction to enjoin Eagle's special meeting, which was scheduled on November 17, 2011.

I.      On November 4, 2011, Defendants filed a supplementary proxy material stating that the options to be granted under the plan "will be in the aggregate equal to not more than 10% of the Company's issued and outstanding Common Stock on a fully diluted basis."

J.      On November 9 2011, Metcalf withdrew the preliminary injunction motion, asserting as a basis for the withdrawal that Defendants had both limited and disclosed the effect

of the 2011 Equity Incentive Plan.  The motion was then terminated by the Court's Summary Order dated November 22, 2011.

       K.     On March 19, 2012, the Individual Defendants filed their Answer in the Options Derivative Action.

       L.     Chitwood Harley Harnes LLP is legal counsel to Plaintiffs ("Plaintiffs' Counsel") in the Federal Actions.

### Summary of the New York Actions

       M.     On August 23, 2011, Chan filed the Chan Action derivatively on behalf of Eagle against the Individual Defendants.  On August 30, 2011, Harry E. Harris, Jr. filed the Harris Action derivatively on behalf of Eagle against the Individual Defendants.  The New York Actions presented similar allegations and causes of action as the Federal Derivative Action.  On September 12, 2011, the parties in the New York Actions filed a joint stipulation and proposed order requesting consolidation, which was denied by the New York Supreme Court on January 11, 2012, when the Court rendered its decision to grant Defendants' motion to stay the New York Actions.

       N.     Kessler Topaz Meltzer & Check, LLP and The Shapiro Firm, LLP together ("New York Counsel") represent both Chan and Harris in the New York Actions.

### Discovery and Final Resolution of Claims

       O.     In accordance with the Court's case management plan, fact discovery proceeded in the Federal Derivative Action.  The parties to the Actions produced all relevant material in their respective files, subject to Defendants' assertion of attorney-client privilege as reflected in their privilege log.

P.      Defendants initially produced 22,000 pages, subject to a stipulated confidentiality order.    Plaintiffs' Counsel made a number of supplementary requests and issued limited clarifying interrogatories.    In addition, Plaintiffs' Counsel disputed the privilege assertion pursuant to the exception in *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970).  Defendants thereafter produced an additional 3,600 pages of relevant documents. Plaintiffs' Counsel also sought discovery from third parties.  A document subpoena to Steven Hall & Partners, Eagle's compensation consultant, resulted in 15,000 additional pages, and document subpoenas to Delphin and Kelso resulted in an additional 8,500 pages.

Q.      After extensive review and analysis of nearly 50,000 pages of documents, Plaintiffs' Counsel conducted six depositions -- five Individual Defendants and Steven Hall, principal of Steven Hall & Partners.  Mr. Metcalf was in turn deposed by Defendants.  The depositions took place during the period October 9, 2012 through December 15, 2012.

R.      Following the completion of fact discovery, and continuing over a period of months, the parties engaged in extensive arms-length negotiations with regard to the possible settlement of the Actions with the assistance of a third-party neutral mediator, David M. Brodsky.

S.      On December 19, 2012, counsel for Defendants, Plaintiffs' Counsel, New York Counsel, and Defendants' insurer, participated in an all-day mediation conducted by Mr. Brodsky, but no agreement was reached.  Over a period of months, the parties continued to engage in good faith discussions and held two additional formal mediation sessions on April 8, 2013 and April 10, 2013.

T.      While negotiations were continuing, by letters dated January 9, 2013 and February 25, 2013, the parties to the Federal Derivative Action requested two extensions on the

deadline for filing dispositive motions to permit additional time for settlement discussions.  The deadline was ultimately extended by the Court to April 1, 2013.  Along with the extensions for filing dispositive motions, the Court postponed the second case management conference to April 12, 2013.  While the good faith settlement negotiations were continuing, Defendants complied with the April 1, 2013 deadline and filed a summary judgment motion to dispose of the entire action.  The Court canceled the April 12, 2013 case management conference.  The parties, with the help of Mr. Brodsky, reached an agreement in principle on April 10, 2013, subject to negotiation of additional ancillary issues, and a Memorandum of Understanding was agreed to as of May 31, 2013.

U.     After fact discovery had concluded and before a settlement agreement was reached in principle, Mr. Metcalf passed away in January 2013.  Helen Metcalf, the executor Mr. Metcalf's estate, was substituted as a plaintiff in each of the Federal Actions..  Also, Lawrence Doppelt, co-trustee of the Frederick Doppelt Trust along with Manny Doppelt, passed away in March 2013.   At that point, plaintiff Manny Doppelt became sole trustee of the Frederick Doppelt trust, which continues to own Eagle shares.

V.     At the request of the parties, the Court issued an Order on June 4, 2013, approving the withdrawal of Eagle's motion for summary judgment, on consent and without prejudice, pending the Court's consideration of a proposed settlement.  Furthermore, that Order set June 14, 2013 as the deadline for filing a Stipulation of Compromise and Settlement for the Court's consideration under Fed. R. Civ. P. 23.1(c).

W.     The Parties believe that the Stipulation is in the best interests of the Parties and Eagle's current stockholders and that the Stipulation confers substantial benefits upon Eagle and

that the interests of the Parties would best be served by settlement of the Actions on the terms and conditions set forth herein.

### Plaintiffs' Claims and the Benefits of the Settlement

X.     Plaintiffs and New York Plaintiffs believe that the claims asserted in the Actions have merit, but also believe that the settlement set forth below provides substantial and immediate benefits for Eagle and its current stockholders.  In addition to these substantial benefits, Plaintiffs, New York Plaintiffs, and their counsel have considered: (i) the attendant risks of continued litigation and the uncertainty of the outcome of the Actions; (ii) the probability of success on the merits; (iii) the inherent problems of proof associated with, and possible defenses to, the claims asserted in the Actions; (iv) the desirability of permitting the settlement to be consummated according to its terms; (v) the expense and length of continued proceedings necessary to prosecute the Actions against the Individual Defendants through trial and appeals; (vi) the fact that much of the challenged compensation was stock based, and the value of that stock, and therefore the ultimate value of the awarded compensation, declined precipitously after the litigation was filed as a result of deteriorating circumstances in the shipping industry; (vii) the fact that, following the filing of this lawsuit, the total compensation paid to the Company's executive officers has been substantially reduced, and (viii) the conclusion of Plaintiffs, New York Plaintiffs, and their counsel that the terms and conditions of the Stipulation are fair, reasonable, and adequate, and that it is in the best interests of Eagle and its current stockholders to settle the Actions on the terms set forth herein.

Y.     Based on thorough review and analysis by Plaintiffs' Counsel and New York Counsel of the relevant facts, allegations, defenses, and controlling legal principles, such counsel believe that the settlement set forth in this Stipulation is fair, reasonable, and adequate, and

confers substantial benefits upon Eagle and its current stockholders. Based upon such counsel's evaluation, Plaintiffs and New York Plaintiffs have determined that the settlement is in the best interests of Eagle and its current stockholders and have agreed to settle the Actions upon the terms and subject to the conditions set forth herein.

### Defendants' Denials of Wrongdoing and Liability

Z.     The Individual Defendants have denied, and continue to vigorously deny that they have committed or intended to commit any breaches of their obligations or violations of law arising out of any of the conduct, statements, acts, or omissions alleged in the Actions, and maintain that their conduct was at all times proper and in compliance with applicable law. The Individual Defendants further strongly deny that they breached their fiduciary or any other legal duties. The Individual Defendants also strongly deny that Eagle was harmed by any conduct of the Individual Defendants alleged in the Actions or that could have been alleged therein. Each of the Individual Defendants asserts that, at all relevant times, they acted in good faith and in a manner they reasonably believed to be in the best interests of Eagle and its shareholders.

AA.     Defendants, however, recognize the uncertainty and the risk inherent in any litigation, and the difficulties and substantial burdens, expense, and length of time that may be necessary to defend this proceeding through the conclusion of discovery, summary judgment motions, trial, post-trial motions, and appeals. Defendants wish to eliminate the uncertainty, risk, burden and expense of further litigation, and to permit the operation of Eagle without further distraction and diversion of its directors and executive personnel with respect to the Actions. Defendants have therefore determined to settle the Actions on the terms and conditions set forth in this Stipulation and to put the Released Claims to rest finally and forever, without in any way acknowledging any wrongdoing, fault, liability, or damages.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, BY AND AMONG THE PARTIES TO THIS STIPULATION, subject to the approval of the Court pursuant to Fed. R. Civ. Proc. Rule 23.1, that all Released Claims (as defined herein) shall be and hereby are compromised, settled, discontinued, and dismissed with prejudice and without costs (except as defined herein), as to all Released Persons (as defined herein), including nominal defendant Eagle, upon the following terms and conditions:

## I.     DEFINITIONS

1.1.    "Effective Date" means the later of (i) the date that the Judgment, which approves in all material respects the releases provided for in the Stipulation and dismisses the Federal Actions with prejudice, becomes Final, and (ii) the date the New York state court enters an order of dismissal with prejudice with respect to the New York actions, and such dismissal becomes Final.

1.2.    "Final" means no longer subject to review upon appeal or review in connection with a Petition for Writ of Certiorari or similar writ, whether by exhaustion of any possible appeal, lapse of time, or otherwise.

1.3.    "Judgment" means the Order and Final Judgment entered by the Court, substantially in the form annexed hereto as Exhibit C.

1.4.    "Notice" means the Notice of Pendency of Settlement of Action, substantially in the form annexed hereto as Exhibit B.

1.5.    "Person" means a natural person, individual, corporation, partnership, limited partnership, limited liability partnership, limited liability company, association, joint venture, joint stock company, estate, legal representative, trust, unincorporated association, government, or any political subdivision or agency thereof, any business or legal entity, and any spouse, heir,

legatee, executor, administrator, predecessor, successor, representative, or assign of any of the foregoing.

1.6.    "Released Claims" means and includes any and all claims for relief or causes of action, debts, demands, rights, or liabilities whatsoever, known or unknown, fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, that were asserted in the Actions, or could have been asserted in the Actions that in any way relate to or arise out of the subject matter of the Actions.

1.7.    "Released Persons" means the Related Persons and their insurers and reinsurers.

1.8.    "Related Persons" means the Individual Defendants, Delphin, and their predecessors, successors, subsidiaries, affiliates, agents, attorneys,  and each of their past or present officers, directors, and employees.  "Related Persons" also includes all current and former officers, directors, or employees of Eagle that were, are, or could have been named in the Actions.

1.9.    "Court" means the United States District Court for the Southern District of New York.

1.10.    "Scheduling Order" means an order scheduling a hearing on the Stipulation and approving the form of Notice and method of giving notice, substantially in the form annexed hereto as Exhibit A.

1.11.    "Settlement Hearing" means the hearing (or hearings) at which the Court will review and assess the adequacy, fairness, and reasonableness of the Stipulation, and the appropriateness and amount of the award of attorneys' fees and expenses to be awarded by the Court (as set forth in Section IV, below).

**II.    TERMS OF SETTLEMENT**

2.1.    In connection with the settlement and in consideration of the Releases set forth herein and dismissal with prejudice of the Actions, Defendants will proceed, and cause Eagle to proceed, as follows (including by enacting resolutions as appropriate):

a.      All outstanding Eagle stock options issued to Defendants from 2008 through 2011 (180,704) will be cancelled;

b.      All stock options granted to Sophocles Zoullas (exercisable for a total of 1,000,000 shares of Eagle's common stock) and Alexis Zoullas (exercisable for a total of 400,000 shares of Eagle's common stock) on or about June 26, 2012 will be reduced in duration from ten years to five years from grant date;

c.      All as yet ungranted stock options available under the Eagle Bulk Shipping Inc. 2011 Equity Incentive Plan will be cancelled;

d.      The following provisions shall apply to compensation until the earlier of December 31, 2015 or when the majority of the membership of the Compensation Committee of Eagle's Board of Directors (the "Compensation Committee") changes:

i.      Executive compensation will be set in accordance with the mandates and guidelines set forth in Section 2.2 herein;

ii.     Annual total director compensation will be capped at an aggregate of $240,000 multiplied by the number of directors, currently $1,200,000 ($240,000 x 5), with no individual director receiving more than $290,000;

iii.    On an annual basis, Sophocles Zoullas shall provide or cause to be provided to the Compensation Committee of the Board of Directors of Eagle on a confidential basis any written material information he receives regarding his interests in Delphin and any information regarding any distribution made to him

on account of his interests in Delphin for any given fiscal year, prior to the Compensation Committee's making any decisions regarding his compensation for such fiscal year. The Compensation Committee will take such information into account in setting his compensation from Eagle for such fiscal year;

f.      Eagle will invoice Delphin $237,500 for administrative services rendered by Eagle during 2012;

g.      The Conflicts Committee of Eagle's Board of Directors (the "Conflicts Committee") will hold meetings on at least a quarterly basis and management will prepare and provide to the Conflicts Committee in advance of its quarterly meeting, a summary of charter and other business opportunities obtained for Delphin ships and for Eagle ships.  Management will follow the procedures set forth in the management agreement by and between Delphin and Eagle to alert members of the Conflicts Committee to any commercially reasonable and material sale, purchase or chartering opportunities to be considered by both Delphin and Eagle.;

h.      Eagle will establish and follow a written policy requiring that:  (i) Eagle shall perform for Delphin only the services called for by the written contractual relationship between the companies; and (ii) any new or additional services for Delphin will be performed by Eagle only with the prior written approval of the Conflicts Committee, after analysis of the costs and benefits of any such services to Eagle;

i.      Eagle will enact and follow written procedures or adopt relevant board resolutions providing that: (i) executive compensation is set in the sole discretion of the Compensation Committee; and (ii) compensation of Eagle's Board of Directors is to be set by the full Board of Directors;

13

j.      On at least a quarterly basis, there will be a meeting or session of only the independent directors of Eagle;

k.      Eagle will enact and follow written procedures requiring that Compensation Committee members meet the NASDAQ standard of independence applicable to audit committees;

l.      All members of Eagle's Board of Directors shall be required to attend all shareholder meetings;

m.      At least 60% of the Eagle's Board of Directors shall be comprised of independent directors.

2.2.    In accordance with a delegation of authority from the Eagle's Board of Directors, the executive compensation program shall be established and administered by the Compensation Committee.  Executives shall have no vote with respect to setting their own compensation, other than to supply information at the request of the Compensation Committee.  The Compensation Committee may, in its discretion, bring executive compensation matters before the full Board for advice or approval.  Additionally, the Compensation Committee shall have full discretion to engage and consult outside advisors of its choosing.

Objectives of the Program.  The primary objectives of the executive compensation program will be to attract and retain highly qualified personnel for positions of substantial responsibility, and to provide incentives for such persons to perform to the best of their abilities, achieve strategic objectives, enable the Company to compete effectively in the seaborne transportation industry and to promote business success.  Accordingly, the compensation program will be designed to attract, motivate and retain executives who possess the talent, leadership and commitment needed to operate Eagle's business, create and implement new

14

opportunities, anticipate and effectively respond to new challenges, and make and execute difficult decisions.  Goals of the executive compensation program will include:

- Aligning the interests of executives with those of shareholders;

- Encouraging and rewarding achievement of the Company's annual and longer-term performance objectives;

- Promoting the long-term success of the Company through an appropriate balance of current and long-term compensation opportunities;

- Differentiating pay based on individual and company performance;

- Reflecting the market and providing competitive compensation opportunities based on performance;

- Making wise use of equity resources to ensure compatibility between senior management and shareholder interests;

- Ensuring that executive compensation is proportionate to, and commensurate with, compensation levels in the industry; and

- Balancing incentives for constructive risk management.

Components of Compensation.  The executive compensation program will be comprised of two main elements: fixed compensation in the form of base salary, and variable incentive compensation which is delivered in cash and equity.  The aggregate amounts awarded shall be subject to the guidelines and limits set forth herein.

Competitive Marketplace Assessment. To provide context and to ensure that executive compensation arrangements are reasonable, the Compensation Committee will reference compensation arrangements for executives at a peer group of companies in the shipping industry

which the Company has previously identified in its annual reports. *See, e.g.,* the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2011, filed with the Securities and Exchange Commission (the "SEC") on March 15, 2012.  The Compensation Committee, in evaluating the data, may, in its sole discretion, determine what weight to accord that data, provided, however, that the cap set forth below based on that data will apply to any executive compensation determination.

<u>General Performance Criteria.</u>  Factors that the Compensation Committee will consider include:

- Actual corporate earnings in comparison to the Company's financial plan;

- Fleet utilization;

- Use and management of the Company's in-house capabilities with regard to fleet management;

- Gathering and use of market intelligence;

- Achievement of the Company's other strategic and commercial objectives;

- Performance relative to similar seaborne transportation companies;

- Performance relative to overall market conditions; and

- The actions taken by management to position the Company for strong growth as general economic conditions improve.

In assessing each particular executive, the Compensation Committee will also consider:

- The scope and importance of the functions the executive performed or for which the executive was responsible;

- That individual's performance in light of the Company's current goals and objectives;

- The nature and scope of the executive's responsibilities;

- Level of communication with the Board;

- Initiative, managerial ability and overall contributions to corporate performance; and

- Contributions to initiatives that will deliver greater future value to shareholders.

<u>Scoring of Executive Performance</u>.  As an aid to quantifying and measuring executive performance when awarding compensation, the Compensation Committee will develop and use a written scorecard, which will form part of the basis for setting compensation.  On the scorecard, the Compensation Committee will rate each executive's performance against the following weighted criteria:  change in revenue (10%), fleet utilization (10%), operating expense (10%), maintaining operating budget (15%), and general and administrative expenses cash budget (15%).  For each of these criterion, the Compensation Committee will assign a performance rating.  The remaining 40% will consist of an additional rating based on the discretion of the Compensation Committee, which can include other performance assessment as well as relevant factors such as retention.

The performance criteria will be scored  as follows:

*Change in Revenue as compared to prior year:*

- 100 %            Within 10% change of peer group

- 150%             Over 10% change above peer group

- 50%              Under 10% below peer group

17

*Operating Expense as compared to prior year:*

- 100 %          Up to 10% above the weighted average of the peer group

- 150%          Less than 10% below the weighted average of the peer group

- 50%           Over 10% above the weighted average of the peer group

*Actual General and Administrative Cash Expenses as compared to budgeted General and Administrative cash expenses:*

To be calculated at the end of the year and verified by the compensation consultant based on the forecast budget submitted at the end of the prior year.

- 100 %          Within 10% of budget

- 150%          Greater than 10% under budget

- 50%           Greater than 10% above budget

*Operating Budget*

To be calculated at the end of the year and verified by the compensation consultant based on the forecast budget submitted at the end of the prior year.

- 100 %          Within 10% of budget

- 150%          Greater than 10% under budget

- 50%           Greater than 10% above budget

*Fleet Utilization*

- 100 %          Greater than 92% but less than 97%

- 150%          Greater than 97%

- 50%           Less than 92%

For each performance criterion, the Compensation Committee will multiply the score times the weight in order to obtain a numerical score.  (For example, the "change in revenue" criterion receives a 10% weighting, so a score of 150% yields a score of 15%).  The scores for each criterion will be summed.  The sum may not exceed 100%.  Any other additional discretionary factors considered by the Compensation Committee will also be scored on a percentage scale, the total of which may not exceed 100%.  Compensation will be awarded based on the sum of 0.6 times the sum of the performance factors and 0.4 times the average of the additional factors, and will be proportionate to that percentage sum, which may not exceed 100%.

Capping of Executive Compensation.  In any event, executive compensation will be capped.  Executive compensation will not exceed the mean of executive compensation awarded for the prior year to the comparable executives at each of five identified comparable companies. Initially, the companies will be:  DryShips Inc., Diana Shipping Inc., Excel Maritime Carriers Ltd., Navios Maritime Holdings, Inc. and Genco Shipping and Trading Limited, as identified in the Eagle's Annual Report on Form 10-K, filed with the SEC on March 15, 2012. More specifically, total 2012 executive compensation at Eagle shall not exceed the average total executive compensation at the five named companies for 2011.   Average executive compensation for these companies shall be determined by reference to the respective companies' Exchange Act filings, and other publicly available information.

### III.    SCOPE OF SETTLEMENT & RELEASES

3.1.    The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Actions and any and all related claims as to any party to the Actions or Person that could have been named in the Actions.

3.2.    Upon the Effective Date, Plaintiffs and New York Plaintiffs (on their own behalf and derivatively on behalf of Eagle), and Eagle, shall have and by operation of the Judgment shall be deemed to have fully, finally, and forever released, relinquished, and discharged the Released Persons from any and all of the Released Claims.  Each and every Eagle stockholder claiming derivatively or on behalf of Eagle will be bound by Eagle's release of the Released Persons from any and all of the Released Claims.

3.3.    Upon the Effective Date, each of the Related Persons shall have and by operation of the Judgment shall be deemed to have fully, finally, and forever released, relinquished, and discharged Eagle, Plaintiffs, and the New York Plaintiffs from any and all claims arising from the institution or prosecution of the Actions.

3.4.    Notwithstanding Sections 3.1, 3.2, 3.3 and 3.5, nothing herein is intended to or does release the following claims (the "Reserved Claims"), but without any agreement or acknowledgment as to the merits or lack thereof of those claims:

3.4.1   Nothing herein is intended to affect any rights with respect to past or future indemnification or advancement or payment of past or future legal fees and defense costs arising under and pursuant to any Released Person's respective indemnification agreements with Eagle, Eagle's certificate of incorporation or by-laws, applicable law, equity or other contract.

3.5.    With respect to the claims released herein, the Parties and their counsel shall be deemed to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code § 1542 (and equivalent, comparable, or analogous provisions of the laws of the United States or any state or territory thereof, or of the common law).  California Civil Code § 1542 provides that:

20

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
HER SETTLEMENT WITH THE DEBTOR.

3.6.    Plaintiffs and New York Plaintiffs, in their individual capacity, and derivatively on behalf of Eagle, Defendants, and each of their counsel acknowledge that they may discover facts in addition to or different from those now known or believed to be true with respect to the subject matter of the claims released herein, but that it is their intention to fully, finally, and forever settle and release with prejudice any and all of the Released Claims and the claims released by Section 3.2.

3.7.    Notwithstanding Sections 3.1, 3.2, 3.3, 3.5, and 3.6, nothing herein shall in any way impair or restrict the rights of the Parties to enforce the terms of the settlement pursuant to this Stipulation.

## IV.    ATTORNEYS' FEES AND EXPENSES

4.1.    Each Party shall bear its own attorneys' fees and costs, but Plaintiffs and Plaintiffs' Counsel, and the New York Plaintiffs and New York Counsel, may apply to the Court for an award of attorneys' fees and expenses  in connection with their prosecution of the Actions, to be paid by Eagle as set forth herein.  Plaintiffs and Plaintiffs Counsel may request an award of attorneys' fees and expenses which, in the aggregate, does not exceed $1.575 million, and Defendants will not oppose any application for an award of fee and expenses that does not exceed,  in the aggregate, more than $1.575 million in attorneys' fees and expenses.

4.2.    Eagle shall pay the amount or amounts the Court awards, up to $1.575 million, pursuant to any fee and expense application.   Payment shall be due within ten (10) days

21

following the occurrence of both of: (1) the entry of the Judgment; and (ii) receipt of all required payment information from Plaintiffs' Counsel and New York Counsel, including wire instructions.   In the event that the Court awards an amount in excess of $1.575 million, Defendants shall have the right to terminate this Stipulation and settlement.

4.3.     Court approval of the Stipulation is not in any way conditioned on Court approval of the fee and expense applications.  Disallowance by the Court of any application for fees and expenses, or any portion thereof, any appeal from any order relating thereto, and any modification or reversal on appeal of any such order, shall not operate to terminate or cancel the Stipulation or affect its other terms, including the releases in set forth in Sections 3.1, 3.2, 3.3, 3.5, and 3.6, or affect or delay the finality of the Judgment approving the Stipulation.

4.4.     Payment of the amount or amounts the Court awards pursuant to the fee and expense applications to Plaintiffs' Counsel and New York Counsel shall constitute full satisfaction of any obligation to pay any amounts to any person, attorney, or law firm for attorneys' fees, expenses, or costs in the Actions incurred by any attorney on behalf of Plaintiffs and/or the New York Plaintiffs with respect to the claims asserted in the Actions against Defendants, and shall relieve Defendants of any other claims or liability to any other attorney or law firm for any attorneys' fees, expenses, and/or costs to which any of them may claim to be entitled on behalf of Plaintiffs and/or the New York Plaintiffs.

## V.     SCHEDULING ORDER AND SETTLEMENT HEARING

5.1.     Within ten (10) business days after execution of the Stipulation, the Parties shall jointly submit the Stipulation together with its related documents to the Court, and shall apply to the Court for entry of the Scheduling Order, in the form annexed hereto as Exhibit A.

22

5.2.    No later than sixty (60) days prior to the date the Court sets for the Settlement Hearing, at the expense of Defendants, Defendants shall cause the Notice, substantially in the form annexed hereto as Exhibit B, to be disseminated by the same methods Eagle uses to disseminate its proxy statement in the ordinary course.  At least ten (10) business days prior to the Settlement Hearing, an appropriate affidavit attesting to compliance with the notice provisions set forth in the Scheduling Order shall be filed with the Court by Defendants.

5.3.    The Parties and their attorneys agree to use their individual and collective best efforts to obtain Court approval of Stipulation.  The parties and their attorneys further agree to use their individual and collective best efforts to effect, take, or cause to be taken all actions, and to do, or cause to be done, all things reasonably necessary, proper, or advisable under applicable laws, regulations, and agreements to consummate and make effective, as promptly as practicable, the Stipulation provided for hereunder and the dismissal of the Actions.

**VI.    STANDSTILL AGREEMENT**

6.1.    Pending Court approval of the Stipulation, the Parties agree to stay any and all proceedings in the Actions other than those incident to the Stipulation.

6.2.    Pending final determination of whether the Stipulation should be approved, all Parties to the Actions (including Plaintiffs, the New York Plaintiffs, the Individual Defendants, and Eagle) agree not to institute, commence, prosecute, continue, or in any way participate in, whether directly or indirectly, representatively, individually, derivatively on behalf of Eagle, or in any other capacity, any action or other proceeding asserting any Released Claims.

6.3.    Notwithstanding Section 7.1, nothing herein shall in any way impair or restrict the rights of any party to defend this Stipulation or to otherwise respond in the event any Person

objects to the Stipulation, the proposed Judgment to be entered, and/or the fee and expense applications.

6.4.    In the event the Stipulation does not become Final or no Effective Date occurs, because the Scheduling Order substantially in the form of Exhibit A is not approved or because the proposed Judgment is not entered, or for any other reason,  the parties will be placed in the positions they held prior to the execution of this Stipulation, and they will retain all their rights to pursue claims and defenses without prejudice, and all obligations under this Stipulation will become null and void, except that Article VIII will remain in effect.

## VII.    DISMISSAL OF ACTIONS

7.1.    If the Court approves the Stipulation, the Parties shall promptly request the Court to enter the proposed Judgment, substantially in the form annexed hereto as Exhibit C.  In the event that such proposed Judgment is not entered upon the parties' request, Section 6.4 is applicable.

7.2.    New York Counsel hereby agree to seek dismissal of the New York Actions with prejudice and without costs to any party (i) within ten (10) days of entry of the Judgment, if there has been no objection to the Judgment, or (ii) if there has been an objection to the Judgement, within ten (10) days of the later of (a) the date the Judgment becomes Final, and (b) the date the New York state court enters an order of dismissal with prejudice with respect to the New York Actions, and such dismissal becomes Final.   New York Counsel and Defendants hereby agree in good faith to take all necessary steps to obtain such dismissal.  In the event that such dismissal is not obtained, Section 6.4 is applicable.

## VIII.   THE STIPULATION IS NOT AN ADMISSION

8.1.    This Stipulation reflects, among other things, the compromise and settlement of disputed claims among the Parties hereto, and neither this Stipulation nor the releases given herein, nor any consideration, nor any actions taken to carry out this Stipulation are intended to be, nor may they be deemed or construed to be, an admission or concession of liability (or lack thereof), or the validity of any claim, or defense, or of any point of fact or law on the part of any Party hereto regarding those facts that have been, might have been, or might be alleged in the Actions or in any other proceeding.   The Defendants and the Released Persons may file the Stipulation and/or Judgment in any action that has been or may be brought against them in order to support a claim or defense based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

## IX.   MISCELLANEOUS PROVISIONS

9.1.    Within thirty (30) days after the Effective Date, Plaintiffs, Plaintiffs' Counsel, New York Plaintiffs and New York Counsel shall return to Eagle, or destroy and certify the same in writing, all documents produced during discovery, except that counsel may retain materials sufficient to comply with any record-keeping obligations.

9.2.    This Stipulation shall be deemed to have been mutually prepared by the Parties hereto and shall not be construed against any of them by reason of authorship.

9.3.    This Stipulation may be executed in one or more counterparts, each of which shall be deemed to be an original and all of which shall constitute one and the same document.  Any signature to the Stipulation by means of facsimile or electronically scanned and sent via email

shall be treated in all manner and respects as an original signature and shall be considered to have the same binding legal effect as if it were the original signed version thereof.

9.4.   All Persons executing this Stipulation thereby represent that they have been authorized and empowered to do so.

9.5.   Plaintiffs, Plaintiffs' Counsel, New York Plaintiffs, and New York Counsel represent and warrant that none of  claims referred to in this Stipulation or that could have been alleged in the Actions or the New York Actions have been assigned, encumbered, or in any manner transferred in whole or in part.

9.6.   This Stipulation embodies and represents the full agreement of the Parties and supersedes any and all prior agreements and understandings relating to the subject matter hereof between or among any of the Parties hereto.  This Stipulation shall not be modified or amended, nor shall any provision of this Stipulation be deemed waived, unless such modification, amendment, or waiver is in writing and executed by or on behalf of the Parties.  The waiver by any Party of any provision or the breach of this Stipulation shall not be deemed a waiver of any other provision or breach of this Stipulation.

9.7.   The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

9.8.   Notwithstanding the entry of the Judgment, the Court shall retain jurisdiction with respect to the implementation, enforcement, and interpretation of the terms of the Stipulation, and all Parties submit to the jurisdiction of the Court for purposes of implementing, enforcing, and interpreting the Stipulation.

9.9.    The construction and interpretation of this Stipulation shall be governed by and construed in accordance with the laws of the State of New York and without regard to the laws that might otherwise govern under principles of conflicts of law applicable hereto.

9.10.    Without further order of the Court, the Parties hereto may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

9.11.    The following exhibits are annexed hereto and incorporated herein by reference:

(a)    Exhibit A: Scheduling Order With Respect to Notice and Settlement Hearing

(b)    Exhibit B: Notice of Pendency of Settlement of Action

(c)    Exhibit C: Final Order and Judgment

**IN WITNESS WHEREOF, IT IS HEREBY AGREED** by the undersigned as of the date noted above.

[SIGNATURE PAGES FOLLOW]

CHITWOOD HARLEY HARNES LLP


_Gregory E. Keller_

Gregory E. Keller
1350 Broadway, Suite 908
New York, NY 10018
(917) 595-4600


*Attorneys for Plaintiffs Helen Metcalf, on behalf of
the estate of John T. Metcalf and Manny Doppelt,
as Trustee of the Frederick Doppelt Trust*



KESSLER TOPAZ MELTZER & CHECK, LLP


_Eric L. Zagar (w/ signed express permission)_

Eric L. Zagar
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706


- and-

THE SHAPIRO FIRM, LLP


_Robert J. Shapiro (w/ signed express permission)_

Robert J. Shapiro
500 Fifth Avenue, 14th Floor
New York, NY 10110
(212) 391-6464


*Attorneys for New York Plaintiffs Steven H. Chan and
Harry E. Harris, Jr.*

28

WILMER CUTLER PICKERING HALE
    AND DORR LLP


*Michael G. Bongiorno* (Signed w/
express permission)

Michael G. Bongiorno
399 Park Avenue
New York, NY 10022
(212) 230-8800


*Attorneys for Defendants Douglas P. Haensel,*
*Jon Tomasson, Joseph M. Cianciolo, David B.*
*Hiley, Thomas B. Winmill, and Forrest E. Wylie*



SEWARD & KISSEL LLP


*Bruce G. Paulsen* (Signed
w/ express
permission)

Bruce G. Paulsen
One Battery Park Plaza
New York, NY
(212) 574-1533

*Attorneys for Defendants Sophocles N.*
*Zoullas, Alexis P. Zoullas, Alan S. Ginsberg,*
*And Nominal Defendant Eagle Bulk*
*Shipping Inc.*

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| John T. Metcalf, and Lawrence Doppelt and Manny Doppelt, as Co-Trustees of the Frederick Doppelt Trust, derivatively on behalf of Eagle Bulk Shipping Inc., | ECF  C.A. NO. 11-CV-3996-AKH |
| Plaintiffs, | |
| vs. | |
| Sophocles N. Zoullas, Alexis P. Zoullas, Douglas P. Haensel, Jon Tomasson, Joseph M. Cianciolo,  David B. Hiley, Thomas B. Winmill, Forrest E. Wylie, Alan S. Ginsberg, | |
| Defendants, | |
| and | |
| Eagle Bulk Shipping Inc., Nominal Defendant. | |

SCHEDULING ORDER WITH RESPECT
TO NOTICE AND SETTLEMENT HEARING

      **WHEREAS**, the parties to the above-captioned action ("Eagle I") have entered into a Stipulation of Compromise and Settlement dated June 14, 2013 (the "Stipulation"), which sets forth the terms and conditions for the proposed settlement and dismissal with prejudice of this as well as a related action, *John T. Metcalf v. Sophocles N. Zoullas, et al*., Civil Action No. 11-CV-7728-AKH ("Eagle II," and together with the Eagle I, the "Actions"), as well as two similar derivative actions filed in New York Supreme Court, subject to review and approval by this

1

Court pursuant to Court of Chancery Rule 23.1 upon notice to the current stockholders of nominal Eagle Bulk Shipping Inc. ("Eagle");

NOW, upon application of the parties, after review and consideration of the Stipulation filed with the Court and the exhibits annexed thereto,

**IT IS HEREBY ORDERED** this ___ day of _____, 2013 as follows:

1.      A hearing (the "Settlement Hearing") shall be held on _____, 2013, at _____.m. at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, Courtroom 14D, New York, New York, to (a) determine whether the proposed settlement, on the terms and conditions provided for in the Stipulation, is fair, reasonable, and adequate and in the best interests of Eagle and its stockholders; (b) determine whether the Court should finally approve the Stipulation and enter the Order and Final Judgment (the "Judgment") as provided in the Stipulation, dismissing the Actions with prejudice and extinguishing and releasing the Released Claims (as defined in the Stipulation); (c) hear and determine any objections to the proposed settlement; (d) rule on the fee and expense applications; (e) rule on such other matters as the Court may deem appropriate.

2.      The Settlement Hearing may be adjourned by the Court from time to time without further notice to anyone other than the parties to the Actions and any Objectors (as defined herein).

3.      The Court reserves the right to approve the Stipulation at or after the Settlement Hearing with such modifications as may be consented to by the parties to the Stipulation and without further notice.

4.      The Court approves, in form and content, the Notice of  Proposed Settlement of Actions (the "Notice") filed by the parties with the Stipulation as Exhibit B and finds that the

giving of notice substantially in the manner set forth herein meets the requirement of Fed. R. Civ. Proc. Rule 23.1 and due process, and is the best notice practicable under the circumstances. No later than sixty (60) calendar days prior to the Settlement Hearing, the defendants shall cause the Notice, substantially in the form annexed as Exhibit B to the Stipulation, to be disseminated to shareholders by the same methods Eagle uses to disseminate its proxy statement in the ordinary course.

5.     At least ten (10) business days prior to the Settlement Hearing, defendants' counsel shall file an appropriate affidavit attesting to provision of the Notice in accordance with this Order.

6.     As set forth in the Notice, any record or beneficial stockholder of Eagle who objects to the Stipulation, the proposed Judgment to be entered, and/or the fee and expense applications, who wishes to be heard ("Objector"), may appear in person or by his, her, or its attorney at the Settlement Hearing and present any evidence or argument that may be proper and relevant; provided, however, that no Objector shall be heard or entitled to contest the approval of the terms and conditions of the settlement, or, if approved, the Judgment to be entered thereon, unless he, she, or it has, no later than  ten (10) days before the Settlement Hearing (unless the Court in its discretion shall thereafter otherwise direct, upon application of such person and for good cause shown), filed with this Court, and served (electronically, by hand, or by overnight mail) on counsel, at the addresses below, the following: (a) proof of current ownership of Eagle stock; (b) a written notice of the Objector's intention to appear; (c) a detailed statement of the objections to any matter before the Court; and (d) a detailed statement of all of the grounds thereon and the reasons for the Objector's desire to appear and to be heard, as well as all documents or writings which the Objector desires the Court to consider.

3

Carol S. Shahmoon, Esq.
Chitwood Harley Harnes LLP
1350 Broadway, Suite 908
New York, NY 10018
(917) 595-4600
cshahmoon@chitwoodlaw.com

*Attorneys for Plaintiffs Helen Metcalf, on behalf of*
*the estate of John T. Metcalf, and Manny Doppelt,*
*as Trustee of the Frederick Doppelt Trust*


Eric Z. Zagar, Esq.
Kessler Topaz Meltzer & Check, LLP
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
ezagar@ktmc.com

*Attorneys for Steven H. Chan and*
*Harry E. Harris, Jr.*


Michael G. Bongiorno
Wilmer Cutler Pickering Hale
   and Dorr LLP
399 Park Avenue
New York, NY 10022
(212) 230-8800
michael.bongiorno@wilmerhale.com

*Attorneys for Defendants Douglas P. Haensel,*
*Jon Tomasson, Joseph M. Cianciolo, David B.*
*Hiley, Thomas B. Winmill, and Forrest E. Wylie*


Bruce G. Paulsen, Esq.
Seward & Kissel LLP
One Battery Park Plaza
New York, NY
(212) 574-1533
Paulsen@sewkis.com

*Attorneys for Defendants Sophocles N.*
*Zoullas, Alexis P. Zoullas, Alan S. Ginsberg,*
*And Nominal Defendant Eagle Bulk*
*Shipping Inc.*

4

7.      Any person or entity who fails to object in the manner prescribed above shall be deemed to have waived such objection (including the right to appeal), unless the Court in its discretion allows such objection to be heard at the Settlement Hearing, and shall forever be barred from raising such objection in these Actions or any other action or proceeding or otherwise contesting the Stipulation, or any application for an award of attorneys' fees and expenses, and will otherwise be bound by the Judgment to be entered and the releases to be given.

8.      At least 24 days prior to the Settlement Hearing, Plaintiffs' Counsel shall file with the Court a motion for final approval of the proposed settlement and supporting materials, as well as any application for an award of fees and expenses of  Plaintiffs' Counsel and New York Plaintiffs' Counsel, together with supporting materials.  Any objections to the requested fees or expenses shall be filed and served no later than ten (10) days prior to the Settlement Hearing.

9.      At least five (5) business days prior to the Settlement Hearing, the parties may file with the Court a response brief to any objections made by an Objector pursuant to Paragraph 6, above, and plaintiffs may file and serve a brief response to any objections to the fee and expense applications.

10.      In the event that the Stipulation is not approved by the Court, the proposed settlement  and any actions or materials taken or filed in connection therewith shall become null and void for all purposes, and all negotiations, transactions, and proceedings connected with it: (a) shall be without prejudice to the rights of any party thereto; (b) shall not be deemed to be construed as evidence of, or an admission by any party of any fact, matter, or thing; and (c) shall not be admissible in evidence or be used for any purpose in any subsequent proceedings in these Actions or any other action or proceeding.  The parties shall be deemed to have reverted to their

respective status in these Actions as of the date and time immediately prior to the execution of the Stipulation, and, except as otherwise expressly provided, the parties shall proceed in all respects as if the Stipulation and any related orders had not been entered.

11.     All discovery and other proceedings in these Actions (except as may be necessary to carry out the terms and conditions of the proposed settlement) are hereby stayed and suspended until further order of the Court.  Except as provided in the Stipulation, pending final determination of whether the Stipulation should be approved, all parties to these Actions are hereby enjoined against instituting, commencing, prosecuting, continuing, or in any way participating in, whether directly, representatively, individually, derivatively on behalf of Eagle, or in any other capacity, any action or other proceeding asserting any Released Claims.

12.     The Court may, for good cause shown, extend any of the deadlines set forth in this Order without further notice to anyone other than the parties to these Actions and any Objectors.

_____

Judge Alvin K. Hellerstein

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| John T. Metcalf, and Lawrence Doppelt and Manny Doppelt, as Co-Trustees of the Frederick Doppelt Trust, derivatively on behalf of Eagle Bulk Shipping Inc., | ECF <br><br> C.A. NO. 11-CV-3996-AKH |
| Plaintiffs, | |
| vs. | |
| Sophocles N. Zoullas, Alexis P. Zoullas, Douglas P. Haensel, Jon Tomasson, Joseph M. Cianciolo,  David B. Hiley, Thomas B. Winmill, Forrest E. Wylie, Alan S. Ginsberg, | |
| Defendants, | |
| and | |
| Eagle Bulk Shipping Inc., | |
| Nominal Defendant. | |

<u>**NOTICE OF PROPOSED SETTLEMENT OF ACTION**</u>

**TO: ALL CURRENT STOCKHOLDERS OF EAGLE BULK SHIPPING INC.**
**(TRADING SYMBOL: EGLE)**

**PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.  YOUR RIGHTS WILL BE AFFECTED BY THE LEGAL PROCEEDINGS IN THIS LITIGATION.  IF THE COURT APPROVES THE PROPOSED SETTLEMENT, YOU WILL BE FOREVER BARRED FROM CONTESTING THE FAIRNESS, REASONABLENESS, AND ADEQUACY OF THE PROPOSED SETTLEMENT, OR PURSUING THE CLAIMS DEFINED HEREIN.**

**IF YOU HOLD EAGLE BULK SHIPPING INC. COMMON STOCK FOR THE BENEFIT OF ANOTHER, PLEASE PROMPTLY TRANSMIT THIS DOCUMENT TO SUCH BENEFICIAL OWNER.**

**IF YOU DO NOT OBJECT TO THE PROPOSED SETTLEMENT OR ATTORNEYS'
FEE AND EXPENSE AWARD DESCRIBED IN THIS NOTICE, YOU ARE NOT
OBLIGATED TO TAKE ANY ACTION.**

## I.   WHY ARE YOU RECEIVING THIS NOTICE?

The purpose of this Notice is to tell you about: (i) lawsuits (the "Actions") in the United States District Court for the Southern District of New York (the "Federal Court") and in New York State Supreme Court ("New York Court") brought on behalf of Eagle Bulk Shipping Inc. ("Eagle" or the "Company"); (ii) a proposal to settle the Actions as provided in a Stipulation of Compromise and Settlement (the "Stipulation"); and (iii) your right, among other things, to attend and participate in a hearing to be held on _____, 2013 at _____.m., at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, Courtroom 14D, New York, New York (the "Settlement Hearing").

This Notice describes the proposed settlement of the claims brought on behalf of Eagle and what steps you may, but are not required to, take concerning the proposed settlement.  If the Federal Court approves the proposed settlement, it will enter an Order and Final Judgment that would end the Actions.

**THE FOLLOWING DESCRIPTION DOES NOT CONSTITUTE FINDINGS OF ANY COURT.  IT IS BASED ON STATEMENTS OF THE PARTIES AND SHOULD NOT BE UNDERSTOOD AS AN EXPRESSION OF ANY OPINION OF ANY COURT AS TO THE MERITS OF ANY OF THE CLAIMS OR DEFENSES RAISED BY ANY OF THE PARTIES.**

## II.   BACKGROUND: WHAT ARE THE ACTIONS ABOUT?

Helen Metcalf, on behalf of the estate of John T. Metcalf, and Manny Doppelt, on behalf of the Frederick Doppelt Trust, (together "Plaintiffs") and Steven H. Chan and Harry E. Harris, Jr. (together the "New York Plaintiffs"), are current Eagle stockholders.  Plaintiffs are represented by Chitwood Harley Harnes LLP ("Plaintiffs' Counsel").  New York Plaintiffs are represented by Kessler Topaz Meltzer & Check, LLP and The Shapiro Firm, LLP (together "New York Counsel").

Nominal defendant Eagle is a Marshall Islands corporation with its principal place of business in New York, New York.  Defendants Sophocles N. Zoullas, Alexis P. Zoullas, Douglas P. Haensel, Jon Tomasson, Joseph M. Cianciolo, David B. Hiley, Thomas B. Winmill, Forest E. Wylie, and Alan S. Ginsberg (collectively, the "Individual Defendants") are present or former officers and/or directors of Eagle.

On June 13, 2011, the late John T. Metcalf filed an action in the Federal Court (the "Eagle I Action") derivatively on behalf of Eagle against the Individual Defendants, claiming that certain of the Individual Defendants breached their fiduciary duties of loyalty in connection with director and officer compensation.  The complaint also asserted breach of fiduciary duty with respect to Delphin LLC (together with its affiliates, "Delphin"), a shipping company newly formed by a private equity firm, Kelso & Co., and joined by Eagle CEO Sophocles Zoullas.   On October 12, 2011, Manny Doppelt and the late Lawrence Doppelt, as co-Trustees of the Frederick Doppelt Trust, joined the Eagle I Action as plaintiffs.  On September 7, 2011,

4

Defendants filed a motion to dismiss the Eagle I Action.  The Federal Court denied the motion by summary order dated November 21, 2011.

On August 23, 2011, Steven H. Chan filed an action in New York Court and Harry E. Harris filed a similar action in New York Court.  The actions in New York Court (the "New York Actions") presented similar allegations and causes of action as the Eagle I Action. On January 11, 2012, the New York Court stayed both actions filed by the New York Plaintiffs.

On October 31, 2011, Mr. Metcalf filed a related action in the Federal Court (the "Eagle II Action") alleging claims for violation of Section 14(a) of the Securities Exchange Act of 1934 and direct and derivative claims for breach of fiduciary duty in connection with Eagle's October 12, 2011 proxy statement, in which it solicited proxies to approve its 2011 Equity Incentive Plan and a reverse stock split.  The complaint alleged that the transactions could result in Eagle executives owning more than 50% of the company.  On November 3, 2011, Mr. Metcalf filed a motion for preliminary injunction to enjoin Eagle's special meeting, which was scheduled on November 17, 2011.  On November 4, 2011, Eagle filed supplementary proxy material stating that the options to be granted under the plan would be limited to no more than 10% of the Company's issued and outstanding stock.  On November 9, 2011, Mr. Metcalf withdrew the preliminary injunction motion, asserting as a basis for the withdrawal that defendants had both limited and disclosed the effect of the 2011 Equity Incentive Plan.

Plaintiffs' Counsel conducted extensive discovery.  Among other things, Plaintiffs' Counsel: reviewed over 50,000 pages of documents; deposed six fact witnesses; issued supplementary discovery requests; and engaged in other discovery procedures. Helen Metcalf, the executor of John T. Metcalf's estate, was substituted as a plaintiff in both Eagle I and Eagle II, because Mr. Metcalf passed away.  Lawrence Doppelt also passed away, and Manny Doppelt, as sole trustee of the Frederick Doppelt Trust, remains a plaintiff in the Eagle I action.

The Individual Defendants have vigorously denied and continue to vigorously deny that they have committed any act or omission giving rise to any breach of fiduciary duty, liability, and/or violation of law.

## III.   HOW WAS THE SETTLEMENT REACHED?

After considerable litigation and pursuant to the Federal Court's case management order requiring the parties to engage in settlement discussions at the close of fact discovery, the parties participated in a mediation session with Mr. David M. Brodsky, a highly experienced corporate governance lawyer and mediator of complex disputes, on December 19, 2012.  This session failed to produce a settlement, but the parties continued good faith discussions for several months thereafter.  Additional formal mediation sessions were held on April 8, 2013 and April 10, 2013.  With the help of the mediator, the parties reached agreement on the proposed settlement.

**THE COURTS HAVE NOT FINALLY DETERMINED THE MERITS OF PLAINTIFFS' CLAIMS OR THE DEFENSES THERETO.  THIS NOTICE DOES NOT IMPLY THAT THERE HAS BEEN OR WOULD BE ANY FINDING OF VIOLATION**

**OF THE LAW BY THE INDIVIDUAL DEFENDANTS OR THAT RECOVERY COULD BE HAD IN ANY AMOUNT IF THE ACTIONS WERE NOT SETTLED.**

## IV.    WHAT ARE THE TERMS OF THE SETTLEMENT?

The Stipulation generally requires the cancellation of options granted from 2008 through 2011, a shortening of the option term for certain options issued to executives of the Company in 2012, and a cancellation of any unissued options under Eagle's 2011 Equity Incentive Plan.  The Stipulation also imposes a number of changes in executive compensation practices prospectively, including a cap on both executive compensation and director compensation.  The Stipulation addresses issues posed by the relationship between Eagle, Delphin and Sophocles Zoullas.  The specific terms are as follows:

- All outstanding Eagle stock options issued to Defendants from 2008 through 2011 (180,704) will be cancelled;
- All stock options granted to Sophocles Zoullas (exercisable for a total of 1,000,000 shares of Eagle's common stock) and Alexis Zoullas (exercisable for a total of 400,000 shares of Eagle's common stock) on or about June 26, 2012 will be reduced in duration from ten years to five years from grant date;
- All as yet ungranted stock options available under the Eagle Bulk Shipping Inc. 2011 Equity Incentive Plan will be cancelled;
- Until the earlier of December 31, 2015 or when the majority of the membership of the Compensation Committee of Eagle's Board of Directors (the "Compensation Committee") changes, (i) Executive compensation will be set in accordance with the mandates and guidelines set forth in the attached Appendix ("Executive Compensation Guidelines"), which states, among other things, that total executive compensation at Eagle shall not exceed the average total executive compensation at the five named peer companies identified in Eagle's 10-K based on the prior year's compensation data published by such companies; (ii) Annual total director compensation will be capped at an aggregate average of no more than $240,000 per director,  with no individual director receiving more than $290,000; (iii) On an annual basis, Sophocles Zoullas shall provide or cause to be provided to the Compensation Committee of the Board of Directors of Eagle on a confidential basis any written material information he receives regarding his interests in Delphin and any information regarding any distribution made to him on account of his interests in Delphin for any given fiscal year, prior to the Compensation Committee's making any decisions regarding his compensation for such fiscal year. The Compensation Committee will take such information into account in setting his compensation from Eagle for such fiscal year;
- Eagle will invoice Delphin $237,500 for administrative services rendered by Eagle during 2012;
- The Conflicts Committee of Eagle's Board of Directors (the "Conflicts Committee") will hold meetings on at least a quarterly basis and management will prepare and provide to the Conflicts Committee in advance of its quarterly meeting, a summary of charter and other business opportunities obtained for Delphin ships and for Eagle

ships.  Management will follow the procedures set forth in the management agreement by and between Delphin and Eagle to alert members of the Conflicts Committee to any commercially reasonable and material sale, purchase or chartering opportunities to be considered by both Delphin and Eagle;

- Eagle will establish and follow a written policy requiring that:  (i) Eagle shall perform for Delphin only the services called for by the written contractual relationship between the companies; and (ii) any new or additional services for Delphin will be performed by Eagle only with the prior written approval of the Conflicts Committee, after analysis of the costs and benefits of any such services to Eagle;

- Eagle will enact and follow written procedures or adopt relevant board resolutions providing that: (i) executive compensation is set in the sole discretion of the Compensation Committee; and (ii) compensation of Eagle's Board of Directors is to be set by the full Board of Directors;

- On at least a quarterly basis, there will be a meeting or session of only the independent directors of Eagle;

- Eagle will enact and follow written procedures requiring that Compensation Committee members meet the NASDAQ standard of independence applicable to audit committees;

- All members of Eagle's Board of Directors shall be required to attend all shareholder meetings; and

- At least 60% of the Eagle's Board of Directors shall be comprised of independent directors.

Because the Actions were brought for the benefit of Eagle, any recovery in the litigations (whether from this or any settlement or through a judgment in favor of the Plaintiffs) would go to Eagle.  Eagle stockholders will not receive any direct payment as a result of the Stipulation and will not need to fill out any kind of claims form as a result of the settlement.

If the Federal Court approves the proposed Stipulation, the New York Plaintiffs will then request that the New York Court dismiss the actions filed by them with prejudice because the Stipulation finally resolves all claims of Eagle against the Released Persons (as defined below) arising out of the facts on which the Actions are based.

## V.      WHAT CLAIMS WILL THE SETTLEMENT RELEASE?

### *Under the Stipulation, the following releases will occur, except as noted below:*

Plaintiffs and New York Plaintiffs (on their own behalf and derivatively on behalf of Eagle), and Eagle will fully, finally, and forever release, relinquish, and discharge the Released Persons (as defined below) from any and all of the Released Claims (as defined below).  Because Eagle is releasing claims, any stockholder will be barred from bringing a Released Claim on behalf of, or in the name of, Eagle.

7

Each of the Released Persons (as defined below) shall fully, finally, and forever release, relinquish, and discharge Plaintiffs and the New York Plaintiffs, and Eagle, from any and all claims arising from the institution or prosecution of the Actions.

The "Released Persons" include: the Individual Defendants, Delpin Shipping L.L.C., and their predecessors, successors, subsidiaries, affiliates, agents, attorneys, insurers, reinsurers and each of their past or present officers, directors, and employees. "Released Persons" also includes all current and former officers, directors, or employees of Eagle that were, are, or could have been named in the Actions.

The "Released Claims" include: any and all claims for relief or causes of action, debts, demands, rights, or liabilities whatsoever, known or unknown, fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, that were asserted in the Actions or could have been asserted in the Actions that in any way relate to or arise out of the subject matter of the Actions.

*The following claims are reserved and not being released as part of the Stipulation:*

Each of Eagle and the Released Persons shall retain and reserve all of their respective claims or rights that may exist for advancement and payment from Eagle and/or reimbursement to Eagle of legal fees and defense costs arising under and pursuant to any Released Person's respective indemnification agreements with Eagle, Eagle's certificate of incorporation or by-laws, applicable law, equity or other contract.

## VI.    WHAT ARE THE REASONS FOR SETTLING THE ACTIONS?

Plaintiffs and New York Plaintiffs believe that the claims asserted in the Actions have merit and that Plaintiffs' Counsel's investigation supports the claims asserted, but also believe that the settlement set forth above provides substantial and immediate benefits for Eagle and its current stockholders. Plaintiffs and New York Plaintiffs and their respective counsel have taken into account the uncertain outcome and the risk of any litigation, especially in complex stockholder litigation such as the Actions, as well as the difficulties and delays inherent in such litigation. They also are mindful of inherent problems of proof associated with, and possible defenses to, the violations asserted in the Actions. In addition, they recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Actions against the Individual Defendants through trial and appeals. Based upon these considerations, among others, and having been informed by the extensive discovery, Plaintiffs, New York Plaintiffs and their respective counsel have concluded that the terms and conditions of the Stipulation confer substantial benefits upon and are in the best interests of Eagle and its stockholders.

The Individual Defendants have denied and continue to vigorously deny that they have committed or intended to commit any breaches of their obligations or violations of law arising out of any of the conduct, statements, acts, or omissions alleged in the Actions, and maintain that their conduct was at all times proper and in compliance with applicable law. The Individual Defendants further strongly deny that they breached their fiduciary or any other legal duties. The Individual Defendants also strongly deny that Eagle was harmed by any conduct of the

Individual Defendants alleged in the Actions or that could have been alleged therein. Each of the Individual Defendants asserts that, at all relevant times, they acted in good faith and in a manner they reasonably believed to be in the best interests of Eagle and its shareholders.

Defendants, however, recognize the uncertainty and the risk inherent in any litigation, and the difficulties and substantial burdens, expense, and length of time that may be necessary to defend this proceeding through the conclusion of discovery, summary judgment motions, trial, post-trial motions, and appeals. Defendants wish to eliminate the uncertainty, risk, burden and expense of further litigation, and to permit the operation of Eagle without further distraction and diversion of its directors and executive personnel with respect to the Actions. Defendants have therefore determined to settle the Actions on the terms and conditions set forth in this Stipulation and to put the Released Claims to rest finally and forever, without in any way acknowledging any wrongdoing, fault, liability, or damages.

## VII.  HOW WILL THE ATTORNEYS GET PAID?

To date, neither Plaintiffs' Counsel nor New York Counsel has received any payments for their efforts on behalf of Eagle and its stockholders. If the Federal Court approves the Stipulation, Plaintiffs' Counsel and New York Counsel will apply to the Federal Court for an award of attorneys' fees and expenses. Plaintiffs' Counsel will apply for attorney's fees and expenses totaling no more than $1.375 million, and New York Counsel will apply for attorney's fees and expenses totaling no more than $200,000. Any fees or expenses awarded by the Federal Court will be paid by Eagle.

Court approval of the Stipulation is not in any way contingent on the Federal Court approving the fee and expense applications. Disallowance by the Federal Court of the fee and expense applications, or any portion thereof, any appeal from any order relating thereto, and any modification or reversal on appeal of any such order, will not operate to terminate or cancel the Stipulation or affect its other terms, including the releases, if approved by the Federal Court, or affect or delay the finality of the Judgment approving the Stipulation.

All of defendants' own legal fees, costs, and expenses incurred in the Actions will be borne by defendants.

## VIII.  WHEN WILL THE SETTLEMENT HEARING TAKE PLACE?

The Federal Court has scheduled a Settlement Hearing to be held on _____, 2013 at _____.m., at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, Courtroom 14D, New York, New York.

The purpose of the Settlement Hearing is to: (i) determine whether the proposed Stipulation is fair, reasonable, and adequate and in the best interests of Eagle and its stockholders and should be approved by the Federal Court; (ii) determine whether an Order and Final Judgment should be entered dismissing the Actions with prejudice and extinguishing and releasing all of the claims raised in the Actions against the Released Persons; (iii) determine whether the Federal Court should approve the fee and expense applications of Plaintiffs' Counsel

and New York Counsel; (iv) hear and determine any objections to the proposed settlement; and (vi) rule on such other matters as the Federal Court may deem appropriate.

The Federal Court may adjourn the Settlement Hearing from time to time without further notice to anyone other than the parties to the Actions and any Objectors (as defined below). The Federal Court reserves the right to approve the Stipulation at or after the Settlement Hearing with such modifications as may be consented to by the parties to the Stipulation and without further notice.

## IX.    DO I HAVE A RIGHT TO APPEAR AND OBJECT?

Any record or beneficial stockholder of Eagle who objects to the settlement, the judgment proposed to be entered, the fee and expense applications, or who otherwise wishes to be heard (an "Objector"), may appear in person or by his, her, or its attorney at the Settlement Hearing and present any evidence or argument that may be proper and relevant; provided, however, that no Objector shall be heard or entitled to contest the approval of the terms and conditions of the Stipulation, or, if approved, the judgment to be entered thereon, unless he, she, or it has, no later than ten (10) days before the Settlement Hearing (unless the Federal Court in its discretion shall thereafter otherwise direct, upon application of such person and for good cause shown), filed with the Federal Court and served (electronically, by hand, or overnight mail) on counsel, at the addresses below, the following: (i) proof of current ownership of Eagle stock; (ii) a written notice of the Objector's intention to appear; (iii) a detailed statement of the objections to any matter before the Federal Court; and (iv) a detailed statement of all of the grounds thereon and the reasons for the Objector's desire to appear and to be heard, as well as all documents or writings which the Objector desires the Federal Court to consider.

Carol S. Shahmoon, Esq.
Chitwood Harley Harnes LLP
1350 Broadway, Suite 908
New York, NY 10018
(917) 595-4600
cshahmoon@chitwoodlaw.com

*Attorneys for Plaintiffs Helen Metcalf, on behalf of the estate of John T. Metcalf and Manny Doppelt, as Trustee of the Frederick Doppelt Trust*

Eric Z. Zagar, Esq.
Kessler Topaz Meltzer & Check, LLP
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
ezagar@ktmc.com

*Attorneys for New York Plaintiffs Steven H. Chan and Harry E. Harris, Jr.*

Michael G. Bongiorno
Wilmer Cutler Pickering Hale
         And Dorr LLP
399 Park Avenue
New York, NY 10022
(212) 230-8800
michael.bongiorno@wilmerhale.com

*Attorneys for Defendants Douglas P. Haensel,*
*Jon Tomasson, Joseph M. Cianciolo, David B.*
*Hiley, Thomas B. Winmill, and Forrest E. Wylie*

Bruce G. Paulsen, Esq.
Seward & Kissel LLP
One Battery Park Plaza
New York, NY
(212) 574-1533
Paulsen@sewkis.com

*Attorneys for Defendants Sophocles N.*
*Zoullas, Alexis P. Zoullas, Alan S. Ginsberg,*
*And Nominal Defendant Eagle Bulk*
*Shipping Inc.*

Any person or entity who fails to object in the manner prescribed above shall be deemed to have waived such objection (including the right to appeal), unless the Federal Court in its discretion allows such objection to be heard at the Settlement Hearing, and shall forever be barred from raising such objection in these Actions or any other action or proceeding or otherwise contesting the Stipulation, and/or the fee and expense applications, and will otherwise be bound by the Judgment to be entered and the releases to be given.  You are not required to appear in person at the Settlement Hearing in order to have your timely and properly filed objection considered.

## X.     WHAT ARE THE TERMS OF THE PROPOSED ORDER AND FINAL JUDGMENT?

If the Federal Court determines that the Stipulation is fair, reasonable, adequate, and in the best interests of Eagle and its stockholders, the parties shall jointly request that the Federal Court enter an Order and Final Judgment, which will, among other things:

1.     Approve the Stipulation and adjudge the terms thereof to be fair, reasonable, adequate, and in the best interests of Eagle and its stockholders, pursuant to Fed. R. Civ. Proc. Rule 23.1;

2.     Determine that appropriate notice of the Actions, the Stipulation, the Settlement

Hearing, and the right to appear as provided pursuant to Fed. R. Civ. Proc. Rule 23.1.

      3.    Authorize and direct the parties to consummate the settlement in accordance with the terms and conditions of the Stipulation and reserve jurisdiction to supervise the consummation of the Stipulation provided therein;

      4.    Dismiss the Actions with prejudice in accordance with the terms of the Stipulation and grant the releases described more fully above and in accordance with the terms and conditions of the Stipulation.  Separately, the New York Plaintiffs will seek dismissal of the pending New York Actions with prejudice and without costs to any party; and

      5.    Determine the fee and expense applications, as the Federal Court deems appropriate.

## XI.    HOW DO I GET ADDITIONAL INFORMATION ABOUT THE SETTLEMENT?

      This Notice is not all-inclusive.  The references in this Notice to the pleadings in the Actions, the Stipulation and other papers and proceedings are only summaries and do not purport to be comprehensive.  For the full details of the Actions, claims that have been asserted by the parties, and the terms and conditions of the settlement, including a complete copy of the Stipulation, stockholders of Eagle are referred to the Federal Court files in the Actions.  You or your attorney may examine the Federal Court files by logging on to the Public Access to Court Electronic Records website at www.pacer.gov.  Questions about the settlement or about this Notice in general may be addressed to Plaintiffs' Counsel:

             Carol S. Shahmoon, Esq.
             Chitwood Harley Harnes LLP
             1350 Broadway, Suite 908
             New York, NY 10018
             (917) 595-4600
             cshahmoon@chitwoodlaw.com

***PLEASE DO NOT WRITE OR CALL THE COURT***

                                            BY ORDER OF THE COURT

Appendix – Executive Compensation Guidelines

In accordance with a delegation of authority from the Eagle's Board of Directors , the executive compensation program shall be established and administered by the Compensation Committee.  Executives shall have no vote with respect to setting their own compensation, other than to supply information at the request of the Compensation Committee.  The Compensation Committee may, in its discretion, bring executive compensation matters before the full Board for advice or approval.  Additionally, the Compensation Committee shall have full discretion to engage and consult outside advisors of its choosing.

<u>Objectives of the Program</u>.  The primary objectives of the executive compensation program will be to attract and retain highly qualified personnel for positions of substantial responsibility, and to provide incentives for such persons to perform to the best of their abilities, achieve strategic objectives, enable the Company to compete effectively in the seaborne transportation industry and to promote business success.  Accordingly, the compensation program will be designed to attract, motivate and retain executives who possess the talent, leadership and commitment needed to operate Eagle's business, create and implement new opportunities, anticipate and effectively respond to new challenges, and make and execute difficult decisions.  Goals of the executive compensation program will include:

- Aligning the interests of executives with those of shareholders;

- Encouraging and rewarding achievement of the Company's annual and longer-term performance objectives;

- Promoting the long-term success of the Company through an appropriate balance of current and long-term compensation opportunities;

- Differentiating pay based on individual and company performance;

1

- Reflecting the market and providing competitive compensation opportunities based on performance;

- Making wise use of equity resources to ensure compatibility between senior management and shareholder interests;

- Ensuring that executive compensation is proportionate to, and commensurate with, compensation levels in the industry; and

- Balancing incentives for constructive risk management.

Components of Compensation.  The executive compensation program will be comprised of two main elements: fixed compensation in the form of base salary, and variable incentive compensation which is delivered in cash and equity.  The aggregate amounts awarded shall be subject to the guidelines and limits set forth herein.

Competitive Marketplace Assessment. To provide context and to ensure that executive compensation arrangements are reasonable, the Compensation Committee will reference compensation arrangements for executives at a peer group of companies in the shipping industry which the Company has previously identified in its annual reports. *See, e.g.,* the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2011, filed with the Securities and Exchange Commission (the "SEC") on March 15, 2012.  The Compensation Committee, in evaluating the data, may, in its sole discretion, determine what weight to accord that data, provided, however, that the cap set forth below based on that data will apply to any executive compensation determination.

General Performance Criteria.  Factors that the Compensation Committee will consider include:

- Actual corporate earnings in comparison to the Company's financial plan;

2

- Fleet utilization;

- Use and management of the Company's in-house capabilities with regard to fleet management;

- Gathering and use of market intelligence;

- Achievement of the Company's other strategic and commercial objectives;

- Performance relative to similar seaborne transportation companies;

- Performance relative to overall market conditions; and

- The actions taken by management to position the Company for strong growth as general economic conditions improve.

In assessing each particular executive, the Compensation Committee will also consider:

- The scope and importance of the functions the executive performed or for which the executive was responsible;

- That individual's performance in light of the Company's current goals and objectives;

- The nature and scope of the executive's responsibilities;

- Level of communication with the Board;

- Initiative, managerial ability and overall contributions to corporate performance; and

- Contributions to initiatives that will deliver greater future value to shareholders.

<u>Scoring of Executive Performance</u>.  As an aid to quantifying and measuring executive performance when awarding compensation, the Compensation Committee will develop and use a written scorecard, which will form part of the basis for setting compensation.  On the scorecard,

3

the Compensation Committee will rate each executive's performance against the following weighted criteria:  change in revenue (10%), fleet utilization (10%), operating expense (10%), maintaining operating budget (15%), and general and administrative expenses cash budget (15%).  For each of these criterion, the Compensation Committee will assign a performance rating.  The remaining 40% will consist of an additional rating based on the discretion of the Compensation Committee, which can include other performance assessment as well as relevant factors such as retention.

The performance criteria will be scored  as follows:

*Change in Revenue as compared to prior year:*

- 100 %              Within 10% change of peer group

- 150%              Over 10% change above peer group

- 50%              Under 10% below peer group

*Operating Expense as compared to prior year:*

- 100 %              Up to 10% above the weighted average of the peer group

- 150%              Less than 10% below the weighted average of the peer group

- 50%              Over 10% above the weighted average of the peer group

*Actual General and Administrative Cash Expenses as compared to budgeted General and Administrative cash expenses:*

To be calculated at the end of the year and verified by the compensation consultant based on the forecast budget submitted at the end of the prior year.

- 100 %              Within 10% of budget

- 150%              Greater than 10% under budget

4

- 50%                    Greater than 10% above budget

*Operating Budget*

To be calculated at the end of the year and verified by the compensation consultant based on the forecast budget submitted at the end of the prior year.

- 100 %                   Within 10% of budget

- 150%                    Greater than 10% under budget

- 50%                     Greater than 10% above budget

*Fleet Utilization*

- 100 %                   Greater than 92% but less than 97%

- 150%                    Greater than 97%

- 50%                     Less than 92%

For each performance criterion, the Compensation Committee will multiply the score times the weight in order to obtain a numerical score.  (For example, the "change in revenue" criterion receives a 10% weighting, so a score of 150% yields a score of 15%).  The scores for each criterion will be summed.  The sum may not exceed 100%.  Any other additional discretionary factors considered by the Compensation Committee will also be scored on a percentage scale, the total of which may not exceed 100%.  Compensation will be awarded based on the sum of 0.6 times the sum of the performance factors and 0.4 times the average of the additional factors, and will be proportionate to that percentage sum, which may not exceed 100%.

Capping of Executive Compensation.  In any event, executive compensation will be capped. Executive compensation will not exceed the mean of executive compensation awarded for the

5

prior year to the comparable executives at each of five identified comparable companies. Initially, the companies will be:  DryShips Inc., Diana Shipping Inc., Excel Maritime Carriers Ltd., Navios Maritime Holdings, Inc. and Genco Shipping and Trading Limited, as identified in the Eagle's Annual Report on Form 10-K, filed with the SEC on March 15, 2012. More specifically, total 2012 executive compensation at Eagle shall not exceed the average total executive compensation at the five named companies for 2011.  Average executive compensation for these companies shall be determined by reference to the respective companies' Exchange Act  filings, and other publicly available information.

ActiveUS 111330892v.2

**EXHIBIT C**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| John T. Metcalf, and Lawrence Doppelt and Manny Doppelt, as Co-Trustees of the Frederick Doppelt Trust, derivatively on behalf of Eagle Bulk Shipping Inc., | ECF<br><br>C.A. NO. 11-CV-3996-AKH |
| Plaintiffs, | |
| vs. | |
| Sophocles N. Zoullas, Alexis P. Zoullas, Douglas P. Haensel, Jon Tomasson, Joseph M. Cianciolo,  David B. Hiley, Thomas B. Winmill, Forrest E. Wylie, Alan S. Ginsberg, | |
| Defendants, | |
| and | |
| Eagle Bulk Shipping Inc., | |
| Nominal Defendant. | |

## <u>ORDER AND FINAL JUDGMENT</u>

**WHEREAS**, a hearing was held before this Court on _____, 2013 pursuant

to this Court's Scheduling Order With Respect to Notice and Settlement Hearing, dated

_____, 2013 (the "Scheduling Order"), and upon a Stipulation of Compromise

and Settlement dated June 14, 2013 (the "Stipulation") outlining a settlement of the above-

captioned action, and a related action before this Court, *John T. Metcalf v. Sophocles N. Zoullas,*

*et al.*, Civil Action No. 11-CV-7728-AKH (together with the above-referenced action, the

"Actions"), which is incorporated herein by reference.  The parties appeared by their attorneys of

record.  The Court heard and considered the submissions and evidence presented in support of the proposed settlement and the applications for an award of attorneys' fees and expenses.  The opportunity to be heard was given to all other persons requesting to be heard in accordance with the Scheduling Order.  The Court considered, among other matters, the benefits of the proposed Stipulation and the risks, complexity, expense and probable duration of further litigation.  The proposed Stipulation and the applications for an award of attorneys' fees and expenses were heard and considered by the Court.

This Order and Final Judgment ("Judgment") incorporates by reference the definitions in the Stipulation and, unless otherwise defined, all capitalized terms shall have the same meanings as set forth in the Stipulation.

**IT IS ORDERED, ADJUDGED AND DECREED**, this _____ day of _____, 2013 that:

1.      The Court finds that Plaintiffs and Plaintiffs' Counsel have adequately represented the interests of Eagle Bulk Shipping Inc. ("Eagle" or the "Company") and its stockholders with respect to the Actions, the claims asserted, and all Released Claims.

2.      The Court finds that the Stipulation is fair, reasonable, adequate, and in the best interests of Eagle and its stockholders.

3.      This Court approves the Stipulation in all respects, and the parties are directed to consummate the settlement in accordance with the terms of the Stipulation.  The Court shall enter and docket this Judgment.

4.      The Notice of Proposed Settlement of Action (the "Notice") has been given to all current stockholders of the Company pursuant to and in the manner directed by the Scheduling Order, proof of mailing, and other dissemination of the Notice was filed with the Court and full

opportunity to be heard has been offered to all parties, current stockholders of the Company, and persons in interest.  The Court finds that the form and means of the Notice was the best notice practicable under the circumstances and was given in full compliance with the requirements of Fed. R. Civ. Proc. Rule 23.1 and due process of law, and that all stockholders of Eagle are bound by the release of the derivative claims pursuant to this Judgment.

5.     This Court has jurisdiction over the subject matter of the Actions, including all matters necessary to effectuate the Stipulation and this Judgment and over all parties to the Actions, including Plaintiffs, and all Defendants (including nominal defendant Eagle).

6.     These Actions and all claims contained therein, as well as all of the Released Claims, are dismissed with prejudice.  As between Plaintiffs and Defendants, the parties are to bear their own costs, except as otherwise provided in the Stipulation and in this Judgment.

7.     Except as otherwise provided in the Stipulation, Plaintiffs (on their own behalf and derivatively on behalf of Eagle Bulk) and Eagle Bulk, fully, finally, and forever release, relinquish and discharge the Released Persons from any and all of the Released Claims.

8.     Except as otherwise provided in the Stipulation, each of Related Persons, by operation of this Judgment, fully, finally, and forever release, relinquish and discharge Plaintiffs and Eagle from any and all claims arising from the institution or prosecution of these Actions.

9.     Except as otherwise provided in the Stipulation, the parties (including Eagle) are permanently and finally enjoined from instituting, commencing, prosecuting, continuing, or in any way participating in, whether directly or indirectly, representatively, individually, derivatively on behalf of Eagle, or in any other capacity, any action or other proceeding asserting any Released Claims against any or all of the Released Persons or any party, or their respective attorneys.

3

10.     Nothing in this Judgment shall in any way impair or restrict the rights of the Defendants (including nominal defendant Eagle) regarding any Reserved Claims, or the rights of any party to enforce the terms of the Stipulation.

11.     Plaintiffs' Counsel are awarded attorneys' fees and expenses in the sum of $_____, and New York Counsel are awarded attorneys' fees and expenses in the sum of $ _____, to be paid by Eagle, which amounts the Court finds to be fair and reasonable, to be paid in accordance with the terms of the Stipulation.

12.     Neither the Stipulation, this Judgment, nor any act performed or document executed pursuant to or in furtherance of the Stipulation: (a) is or may be deemed or offered or received in evidence as a presumption, a concession, or an admission of any fault, liability, or wrongdoing, and except as required to enforce this Stipulation, shall not be offered or received in evidence or otherwise used by any party in any action, whether civil, criminal, or administrative; or (b) shall be interpreted as an admission of liability or wrongdoing on the part of the Individual Defendants, nor an admission on the part of Plaintiffs of any lack of merit of the claims asserted in these Actions.  Notwithstanding the foregoing, Eagle and any of the Individual Defendants may file the Stipulation, or any judgment or order of the Court related hereto, in any action that has been or may be brought against them, in order to support a claim or defense based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

13.     Without affecting the finality of this Judgment in any way, the Court reserves jurisdiction over all matters and disputes relating to the Stipulation and this Judgment, and may enter additional orders as may from time to time be necessary to implement and enforce the

Stipulation and this Judgment.  Nothing herein dismisses or releases any claim by or against any party to the Stipulation arising out of a breach of the Stipulation or violation of this Judgment.

_____
Judge Alvin K. Hellerstein